Dimas BONET, Petitioner,

v.

UNITED STATES POSTAL SERVICE, Respondent.

No. 80–1502.

United States Court of Appeals, Fifth Circuit.

Nov. 20, 1981.

Armando Peralta, Gus Rallis, El Paso, Tex., for petitioner.

Alexander Younger, Dept. of Justice, Washington, D. C., for respondent.

Petition for Review of an Order of the Merit Systems Protection Board.

Before POLITZ and RANDALL, Circuit Judges, and PARKER *, District Judge.

POLITZ, Circuit Judge:

This appeal arises pursuant to the judicial review provisions of the Civil Service Re-

* District Judge of the Middle District of Louisiana, sitting by designation.

form Act of 1978 (the Act), 5 U.S.C. § 7703.[1] Dimas Bonet appeals the decision of the Merit Systems Protection Board (the Board) affirming his discharge from employment with the United States Postal Service (Postal Service) because of alleged grossly immoral off-duty conduct. Finding no evidence in support of the conclusion that Bonet's removal will promote the efficiency of the Postal Service, we reverse and remand for further proceedings.

## The Facts

On November 28, 1979, Dimas Bonet was fired from the Postal Service after serving 21 years with that department (and a total 24 years with the federal government). At the time of his discharge, Bonet was manager of an El Paso, Texas, post office branch station.

The Postal Service instituted an investigation of Bonet following the August 11, 1979, publication in an El Paso newspaper of the names of 22 people, including Bonet, who were indicted by an El Paso county grand jury. Bonet was charged with indecency with a child. The indictment was based upon an alleged indecent act by Bonet involving his eleven-year-old stepdaughter. On September 7, 1979, the indictment against Bonet was dismissed, due to the unwillingness of the mother to prosecute and a family reconciliation.

The Postal Service secured a copy of the district attorney's file and, on October 25, 1979, issued Bonet a notice of proposed removal. Simultaneously, Bonet was suspended, effective October 29, 1979. The Postal Service's proposed removal action was based on: (1) the charge against Bonet of indecency with a child, and (2) other alleged acts of indecency committed by Bonet said to constitute criminal, dishonest, notoriously disgraceful, and immoral conduct. Bonet denied the charges. On November 8, 1979, the Postal Service removed Bonet on the basis of the two charges listed in the notice of proposed removal.

Bonet appealed the Postal Service decision to the Merit Systems Protection Board, which affirmed the agency action, finding that both charges were supported by a preponderance of the evidence.[2] Moreover, the Board concluded that Bonet's removal would promote the efficiency of the Postal Service.

On appeal, Bonet contends that no findings were made and no evidence exists in the record to support the conclusion that his discharge will promote the efficiency of the service. Accordingly, Bonet argues, the Board's decision was arbitrary, capricious, and an abuse of discretion, and, therefore, must be reversed.

## The Statutory Provisions

The Civil Service Reform Act of 1978, Pub.L.No. 95–454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), retains the same measure of protection for the federal civilian employee that was guaranteed by statute[3] prior to enactment of the new civil service legislation. Thus, the 1978 Act provides that the federal government employer may discharge its employees "only for such cause as will promote the efficiency of the

1. Since the administrative proceedings appealed from were instituted subsequent to the January 11, 1979, effective date of the Act, its provisions for judicial review apply to the instant appeal. Civil Service Reform Act of 1978, Pub.L.No. 95–454, § 907, 92 Stat. 1111, 1227 (1978). *See Motley v. Secretary of the United States Dep't of the Army*, 608 F.2d 122 (5th Cir. 1979). Thus, appeal from the final administrative decision is made directly to a United States Court of Appeals. 5 U.S.C. § 7703(a)(1) & (b)(1).

2. The evidence included a copy of the newspaper article in which Bonet's name and address appeared and the following items taken from

the district attorney's file: (1) the statements of the eleven-year-old and twelve-year-old stepdaughters of Bonet detailing incidents involving Bonet's indecent conduct with them; (2) the statement of a detective who took the report of Bonet's six-year-old stepdaughter in which she related one incident involving Bonet's indecent conduct with her; and (3) the statement of Bonet's wife, the mother of the girls, describing one incident she witnessed involving Bonet's indecent conduct with one of her daughters.

3. Originally enacted by Pub.L.No. 89–554, 80 Stat. 527 (1966) (and formerly codified at 5 U.S.C. § 7501(a)).

service." 5 U.S.C. 7513(a). The 1978 Act further provides that, absent criminal conviction, an agency may take disciplinary action against an employee only on the basis of conduct that adversely affects the performance of the employee himself or of other employees.[4] Administrative regulations adopted to effectuate the purposes of the Act specify that disciplinary action against any employee to "promote the efficiency of the service" must be based on: (1) whether the conduct of the individual may reasonably be expected to adversely affect effective performance by the employee of the duties of his position, or (2) whether such conduct may reasonably be expected to adversely affect the effective performance by the agency itself of its duties and responsibilities.[5]

■ Accordingly, in an agency removal action based on employee misconduct, the agency must make two determinations: (1) that the employee, in fact, committed the alleged misconduct; and (2) that the employee's discharge, based on this misconduct, will promote the efficiency of the service. *Cooper v. United States*, 639 F.2d 727 (Ct.Cl. 1980); *Phillips v. Bergland*, 586 F.2d 1007 (4th Cir. 1978). With regard to the latter determination, the statutory scheme anticipates that the agency will establish what has been termed a "vital nex-

us" between the misconduct—whether it be criminal, immoral, or both—and the efficiency of the service. *See Cooper v. United States*, 639 F.2d at 729; *Phillips v. Bergland*, 586 F.2d at 1011; *Young v. Hampton*, 568 F.2d 1253 (7th Cir. 1977); *Doe v. Hampton*, 566 F.2d 265 (D.C.Cir.1977).

## The Standard of Judicial Review

With the enactment of the civil service reform legislation in 1978, Congress supplied the courts of appeals with a specific standard of review applicable in federal employee appeals from adverse agency action. The reviewing court is directed to set aside any agency action, findings, or conclusions found to be:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c).[6]

The essence of Bonet's complaint on appeal is that the agency decision is arbitrary and capricious because it is not based on specific findings of a "nexus" between the charged misconduct and the efficiency of

---

**4.** 5 U.S.C. § 2302(b)(10). The section prohibits agency personnel action that discriminates for or against any employee "on the basis of conduct which does not adversely affect the performance of the employee" or "the performance of others," except that in determining suitability the agency may take "into account" any "*conviction*" of the employee for any crime. 5 U.S.C. § 2302(b)(10). *See* Comment, *Removal for Cause from the Civil Service: The Problem of Disproportionate Discipline* 28 Am. U.L. Rev. 207, 211 n.28 (1979).

**5.** 5 C.F.R. § 731.201 & § 731.202(a). Under these regulations, the Office of Personnel Management, before it can instruct an agency to remove an employee, must determine that such action will promote the efficiency of the service on the basis of:

(1) Whether the conduct of the individual may reasonably be expected to interfere with or prevent effective performance in the position applied for or employed in; or

(2) Whether the conduct of the individual may reasonably be expected to interfere with or prevent effective performance by the employing agency of its duties and responsibilities.

5 C.F.R. § 731.202(a).

**6.** The same standard of review was applied by a majority of the circuits prior to the enactment of this specific provision for judicial review. *See, e. g., DeLong v. Hampton*, 422 F.2d 21 (3d Cir. 1970); *Byrd v. Campbell*, 591 F.2d 326 (5th Cir. 1979); *Elliott v. Phillips*, 611 F.2d 658 (6th Cir. 1979); *Calhoun v. Bailar*, 626 F.2d 145 (9th Cir. 1980); *Henkle v. Campbell*, 626 F.2d 811 (10th Cir. 1980); *Johnson v. United States*, 628 F.2d 187 (D.C.Cir.1980); *Masino v. United States*, 589 F.2d 1048 (Ct.Cl.1978).

At least one circuit had rejected the substantial evidence element of the pre-Act majority review standard. *See Young v. Hampton*, 568 F.2d 1253 (7th Cir. 1977); *Wroblaski v. Hampton*, 528 F.2d 852 (7th Cir. 1976).

the service, and that the record would not support such findings.[7]

We find no evidence exists in the administrative record to support the conclusion that Bonet's removal will promote the efficiency of the service. The administrative finding rests on the assumption that the retention of an employee who commits sexually indecent conduct with minors, regardless of any circumstances and without regard to whether this conduct is a matter of public knowledge or not, *necessarily* reflects adversely on the image of the service, and the further assumption that sanctions against an employee who violates a general standard of off-duty conduct expected of employees *necessarily* promotes the efficiency of the service.

### The Agency Record and the Administrative Findings

Bonet's discharge is based upon his off-duty conduct constituting a violation of section 661.53 of the Code of Ethical Conduct, Employee and Labor Relations Manual of the United States Postal Service. Section 661.53, entitled "Unacceptable Conduct," provides:

> No employee will engage in criminal, dishonest, notoriously disgraceful or immoral conduct, or other conduct prejudicial to the Postal Service. Conviction of a violation of any criminal statute may be grounds for disciplinary action by the Postal Service, in addition to any other penalty imposed by or pursuant to statute.

The formal notice of proposed discharge lists two charges, alleging five sexually indecent acts Bonet committed with his stepdaughters in his home. The notice concludes: "Conduct of this nature reflects unfavorably upon the image of the U. S. Postal Service and flagrantly violates the standards of conduct prescribed for—and required of—all employees."

The agency discharge, affirmed by the Board, relied upon the following evidentiary showings: (a) the copy of a newspaper account of 22 indictments by the county grand jury, one of which named Bonet, gave his address and noted the offense ("indecency with a child"), without identifying him as a postal employee; and (b) two in-house investigative memoranda prepared by a postal inspector identifying and attaching the district attorney's file, accompanied by a copy of a Texas statute indicating that the conduct charged was criminal. The memoranda noted that the indictment had been dismissed, primarily at the insistence of the mother of the children, since a reconciliation had been effected. The agency report in support of the dismissal acknowledged a communication from the Texas Department of Human Resources advising that the state agency was not filing any charges in connection with the allegations of sexual misconduct and commending Bonet and his family for the initiative exercised by them in resolving their problems.

Finding the sexual misconduct proved by the affidavits, the Postal Service discharged Bonet for gross immorality. The agency acknowledged that Bonet was "a good manager," but stated:

> [H]is discharge is not predicated upon his *work record* during the period of his employment, but is predicated upon the appellant's *immoral conduct*—unacceptable conduct for a postal employee .... [T]he acts committed by the appellant, *if* committed off duty, *if* a serious crime, and *if* immoral or unethical is [sic] sufficient justification for discipline up to and including discharge .... The acts committed by the appellant are acts protected against in every nation of this globe. It rubs strongly against the moral fiber of a civilized society—it cannot be said to be ethical; it cannot be said to be moral. While the appellant may argue that it is not job related, it is certainly conduct that is contrary to established work rules

7. Bonet does not raise as an issue on appeal whether substantial evidence exists in the administrative record to support the finding that Bonet committed the conduct charged. We, therefore, do not discuss that element of the agency's removal action.

and language of the ELM [Employees and Labor Relations Manual].

(Emphasis in original.)

■ At this point, we note the following: (1) The agency made no finding, nor was there any evidentiary showing that the private immoral conduct adversely affected the employee in the performance of its function; (2) the indictment for indecent conduct with a minor is shown to have been dismissed; and (3) so far as the record shows, the private sexual misconduct in Bonet's home is known to the employing authority only because of an in-house postal investigation. A dismissed indictment as to one incident, without more, does not show public knowledge of the employee's sexual misconduct or that it is "notorious."

### The Administrative Review

On review of the agency's discharge of Bonet, the Merit Systems Protection Board found the substantive misconduct to be proved adequately and found that it constituted cause for discharge, being conduct in violation of section 661.53, the code of ethical conduct for employees. As noted, this section prohibits any employee from engaging "in criminal, dishonest, *notoriously* disgraceful or immoral conduct, or other conduct prejudicial to the Postal Service." (Emphasis added.) For purposes of argument, the Board accepted the employee's contention that the conduct was not "criminal." It held, however, that the conduct was "disgraceful," "immoral," and "notorious" as (in the Board's words) "evidenced by the newspaper item which identified the appellant as having been *charged* with the offense of Indecency with a Child." (Emphasis added.)

We have already stated that a dismissed indictment does not, without more, constitute notorious knowledge of conduct merely *charged* by an indictment. Nor are we persuaded of the correctness of the Board's unsupported assumption that because Bonet was the manager of a large urban branch office, "*[t]herefore* he was known as a Postal employee by a large segment of the population." (Emphasis added.) Aside from these deficiencies in the findings, the Board fell into clear error in concluding—on the showing made—that the discharge was shown to "promote the efficiency of the service," a statutory prerequisite for disciplinary action against a protected employee.

### The Efficiency of the Service Determination

Before the Board and this court, the Postal Service argued that to maintain Bonet as a branch manager of an important postal station, in light of public knowledge of his indictment for indecency with a child, could conceivably undermine the public confidence and trust in postal employees necessary for the efficient collection and delivery of the mails. Based upon this reasoning [8] —albeit unsupported by any evidentiary showing on the administrative record—the Board found, "the conduct with which [Bonet] was charged could reasonably be expected to interfere with or prevent the effective performance by the agency of its duties and responsibilities."

■ The agency cannot satisfy the statutory requirement that an employee's removal promote the efficiency of the service by use of unsupported, general assertions that such action is necessary to maintain the public confidence. To permit otherwise would be to render nugatory the protections afforded the federal employee by the impo-

---

**8.** The agency's argument that the public confidence will possibly be undermined absent Bonet's removal applies only to the charge against Bonet based upon his indictment for indecency with a child. The Board's statement that the charge of criminal, dishonest, notoriously disgraceful, and immoral conduct with regard to other sexual incidents is "part and parcel of the same behavior for which he was indicted and which thereby became generally known," is

unfounded. Evidence is lacking that the specifics of that conduct were made available to the public in general at any time, or will become known publicly in the future. Thus, considering the inapplicability of the public confidence argument to the second charge of misconduct, we find that the agency made no attempt to establish a nexus between that conduct and the efficiency of the service.

sition of a standard for removal which requires a connection between employee misconduct (especially when off-duty and non-work related) and the job.[9] The agency must demonstrate, therefore, a relationship between *this* employee's misconduct and the spectre that public confidence will be undermined. *See Phillips v. Bergland; Young v. Hampton; Doe v. Hampton.* *See also* Comment, *supra* note 4, at 227.

■ Nor is it sufficient that the agency rely on internal regulations proscribing in general certain employee conduct (*e. g.*, "immoral" or "disgraceful") as proof of the required nexus. The Postal Service's reliance on its code of ethical conduct in this respect amounts to a presumed or *per se* nexus. The government maintains that a *per se* nexus is appropriate when the employee engages in conduct like that charged to Bonet. While we agree that the off-duty conduct attributed to Bonet is indeed reprehensible—and we, by no means, intend to

mitigate or condone such conduct by our disposition of the instant appeal, nor to intimate upon proper showing of nexus that it could not be cause for disciplinary action—we cannot agree that the agency is thereby relieved of its statutory duty to determine the requisite connection between the employee misconduct and the possible undermining of public confidence.

■ Despite our reflective revulsion for the type of off-duty misconduct in question, whether resulting from a now-cured mental disability or not, the 1978 Act does not permit this court nor an employing agency to characterize off-duty conduct as so obnoxious as to show, *per se*, a nexus between it and the efficiency of the service. The 1978 Act prohibits the discharge of a federal employee for conduct that does not adversely affect the performance of that employee or his co-employees, 5 U.S.C. § 2302(b)(10).[10] While the administrative

**9.** As the court emphasized in *Doe v. Hampton*, 566 F.2d 265, 272 n.20 (D.C.Cir.1977):

The nexus requirement serves the salutary end of helping to ensure against abuse of personnel regulations by mandating that an adverse action be taken only for reasons that are directly related to a legitimate governmental interest, such as job performance. As a corollary, it also serves to minimize unjustified governmental intrusions into the private activities of federal employees.

**10.** 5 U.S.C. § 2302(b)(10) provides:

Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority— . . . .

(10) discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others; except that nothing in this paragraph shall prohibit an agency from taking into account in determining suitability or fitness any conviction of the employee or applicant for any crime under the laws of any State, or the District of Columbia, or of the United States.

In enacting this 1980 provision, Congress was specifically concerned that disciplinary action not be directed against a protected employee for off-duty misconduct unless it was related to the employee's or the agency's performance of duty. *See* House Conference Report No. 95–1717, 95th Cong.2d Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News 2723,

2864. Entitled "Conduct Unrelated to Job Performance," the report states:

The Senate bill contains no express provision concerning nonperformance related conduct of an employee or applicant.

The House amendment specifies that it is a prohibited personnel practice to discriminate for or against any employee or applicant on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others. The bill also provides, though, that nothing in the paragraph shall prohibit an agency from taking into account any conviction of the employee or applicant for any crime of violence or moral turpitude when determining suitability or fitness.

The conference report in section 2302(b)(10) adopts the House provision modified so that conviction of a crime may be taken into account when determining fitness or suitability of an employee or applicant. This provision is not meant as an encouragement to take conviction of a crime into account when determining the suitability or fitness of an employee or applicant for employment. Nor is it to be inferred that conviction of a crime is meant to disqualify an employee or an applicant from employment. The conferees intend that only conduct of the employee or applicant that is related to the duties to be assigned to an employee or applicant or to the employee's or applicant's performance or the performance of others may be taken into consideration in determining that employee's suitability or fitness. Con-

regulations provide that an essential determination for discharge of an employee to promote the efficiency of the service is that the conduct charged must reasonably be expected to adversely affect the employee's effective performance of his duties or the effective performance by the employing agency of its responsibilities. 5 C.F.R. § 731.202(a). *See* note 5, *supra.* Furthermore, the statutory standard of judicial review now applicable directs us to set aside any agency findings or conclusions found to be unsupported by substantial evidence. 5 U.S.C. § 7703(c).

▆▆▆ These provisions clearly signal a legislative intent that the agency must demonstrate by sufficient evidence that the off-duty misconduct, upon which the disciplinary action is founded, adversely affects the performance of the duties of the employee or of the agency. We further conclude, in light of the statutory requirements, that the reviewing authority may not place upon the employee, as the Board did, the burden of showing that his continued employment will *not* affect the efficiency of the service. The Board may not shift the burden of proof by presumption or application of the *per se* rule.

Those pre-Act cases recognizing that certain employee misconduct on its face establishes the requisite nexus can generally be distinguished as involving work-related activities easily identifiable with and directly connected to employee performance and agency efficiency. Thus, the following misconduct has been considered to have a bearing "on its face" on the efficiency of the service: insubordination,[11] falsification of official time reports,[12] and misuse of official funds.[13] Similarly, certain misconduct, although taking place away from the workplace, has been found to be so closely associated with the type of work performed by the employee that the nexus can be presumed. In *Hoover v. United States*, 206 Ct.Cl. 640, 513 F.2d 603 (Ct.Cl.1975), the removal of an IRS tax technician responsible for overseeing taxpayer returns, who himself falsified his personal tax returns, was upheld.

However, when the employee misconduct is off-duty and non-work related, even before the 1978 Act, the courts have been generally unwilling to presume that the discharge will promote the efficiency of the service.[14] Therefore, the courts have re-

---

viction of a crime which has no bearing on the duties to be assigned to an employee or applicant or on the employee's or applicant's performance or the performance of others may not be the basis for discrimination for or against an employee or applicant.

**11.** *Henkle v. Campbell*, 626 F.2d 811 (10th Cir. 1980); *Meehan v. Macy*, 392 F.2d 822 (D.C.Cir. 1968).

**12.** *Pascal v. United States*, 543 F.2d 1284 (Ct. Cl.1976).

**13.** *Terry v. United States*, 204 Ct.Cl. 543, 499 F.2d 695 (1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975).

**14.** However, in *Gueory v. Hampton*, 510 F.2d 1222 (D.C.Cir.1974), the court relied on the agency's regulatory determination that criminal conduct is such cause as will promote the efficiency of the service and, in effect, recognized a presumed nexus between the employee's conviction of manslaughter and the efficiency of the service. The Court of Claims cited *Geuory* with approval in *Wathen v. United States*, 527 F.2d 1191, 1197 (Ct.Cl.1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976),

which upheld the discharge of a federal civilian employee, who was indicted for murder and found innocent by reason of his insanity. To the extent that these opinions stand for the proposition that, in those circuits, a *per se* nexus is recognized even when off-duty misconduct is charged, they should be limited to criminal misconduct of the severity of homicide.

The only opinion from this circuit which might be read to support the government's position, *Anonymous v. Macy*, 398 F.2d 317 (5th Cir. 1968), is distinguishable on the basis of the standard of judicial review then applied by the reviewing court. The court upheld the discharge of a postal employee charged with engaging in homosexual acts, despite counsel's argument that the employee's conduct was private and, therefore, did not affect the efficiency of the service. Significantly, the court limited its review of the agency decision to a determination of whether it was reached in compliance with procedural requisites. Since the court refused to examine the merits of the decision—that is, whether the agency properly concluded that the employee's removal would promote the efficiency of the service—it does not support the proposition that certain off-duty conduct will support a *per se* nexus.

versed employee discharges founded on the following conduct: homosexual advances,[15] physical attack of a fellow employee,[16] and conviction for possession of marijuana.[17] The general thrust of these cases is that in situations involving off-duty activities, the reviewing court will require the agency to demonstrate that removal will promote the efficiency of the service. Identification of the cause for removal is not sufficient; the agency must also establish the relationship between the employee misconduct and the adverse effect on its abilities to perform successfully its assigned functions.[18]

■ In the instant case, the Postal Service admitted that Bonet's employment record was satisfactory throughout his 21 year tenure and that he was considered a good station manager. The agency considered that Bonet's work record was not at issue. Rather, the issue was whether Bonet's private immoral conduct was unacceptable conduct for a postal employee. We agree that Bonet's misconduct may be unacceptable for a postal employee, or at least for a visible management position. However, it can only be the basis for discharge if the agency proves by adequate evidence that the conduct adversely affects the efficiency of the postal service. In the absence of *any* attempt on the part of the agency to prove *any* actual nexus between the misconduct and the position of employment, we cannot uphold the decision to discharge.

### Appropriate Disposition

We must set aside the Board's affirmance of the agency's discharge of Bonet. The conclusory findings do not support the determination that his discharge will promote the efficiency of the service. The record is devoid of proof that Bonet's continued employment is detrimental to the public confidence and trust in the Postal Service or in its employees. Our decision rests partially on the basis of the 1978 legislation apparently not noted as applicable by either the employee or the agency in the prior proceedings. Under these circumstances, we deem it appropriate to remand this cause to the Board, with leave to remand to the agency, if it so chooses, for further proceedings consistent with this opinion.

REVERSED and REMANDED.

15. *Norton v. Macy*, 417 F.2d 1161 (D.C.Cir. 1969). *See Schlegel v. United States*, 416 F.2d 1372 (Ct.Cl.1969) (upholding an employee discharge on the basis of homosexual conduct, but not without first finding that the administrative record contained convincing proof that the employee's removal promoted the efficiency of the service).

16. *Phillips v. Bergland*, 586 F.2d 1007 (4th Cir. 1977).

17. *Young v. Hampton*, 568 F.2d 1253 (7th Cir. 1977).

18. The government relies on *Cooper v. United States*, 639 F.2d 727, in support of its contention that, at least where the employee's misconduct is so obviously immoral (and generally considered so), a *per se* nexus is established. In *Cooper*, however, (in which the employee was discharged for indecent sexual conduct with a 5-year-old) the court on first appeal reversed the discharge on the basis that there was no substantial evidence demonstrating that the misconduct occurred. There was evidence in the record relative to the "nexus between appellant's alleged conduct and the efficiency of the service." *See* opinion of the Merit Systems Protection Board on remand, decision number AT752B7790411, March 25, 1981, *aff'd* by order of the Court of Claims, July 10, 1981, in docket number 493–79C. Moreover, while the court on initial appeal indicated implied that it would have upheld the agency's finding that the charged sexual misconduct adversely affected the employer-employee relationship, it in no way inferred that it would do so in the absence of proof in support of the agency's determination. To the contrary, the Court of Claims stated that this determination "must be supported by substantial evidence." 639 F.2d at 729.