Neil K. SHERMAN, Petitioner,

v.

Clifford ALEXANDER, et al.,
Respondents.

No. 80–2276.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1981.

Decided July 7, 1982.

Thomas M. Joyce, Chicago, Ill., for petitioner.

Peter B. Loewenberg, Chief Civilian Personnel Litigation General, Dept. of Army, Washington, D. C., for respondents.

Before PELL, Circuit Judge, FAIR-CHILD, Senior Circuit Judge, and SPRECHER,* Circuit Judge.

PELL, Circuit Judge.

The petitioner, Neil K. Sherman, appeals from a decision of the Merit Systems Protection Board (MSPB or Board) which upheld his removal from employment as a civilian employee of the Department of the Army on the grounds of notoriously disgraceful conduct committed while off-duty. The major issue raised by the petitioner is that the Board's finding of a sufficient nexus between the off-duty conduct and the efficiency of the service was not supported by substantial evidence. He also contends that the Board incorrectly apprehended the burden of proof provided by statute, improperly considered hearsay evidence, and that the Board's decision was therefore arbitrary, capricious, unsupported by substantial evidence, and contrary to law.

I.

The petitioner was employed as an educational guidance counselor by the Department of the Army at Fort Sheridan, Illinois. He was an Army employee from April of 1969 to March 26, 1980, the date of his removal. His work as a counselor had always been rated satisfactory. On March 31, 1979, Sherman was arrested and charged with taking indecent liberties with a twelve-year old child, a class one felony under Illinois law carrying a penalty of fourteen years imprisonment. Ill.Rev.Stat. ch. 89, § 11–4 (1977). Articles covering the arrest reported the petitioner's name and the details of the charge in two local newspapers.

While Sherman was under indictment, several employees at Ft. McCoy, Wisconsin, where the petitioner was temporarily assigned, and at Ft. Sheridan complained of Sherman's sexually offensive on-the-job conduct, consisting of lewd and indecent remarks to female employees and clients, and unwarranted and unsolicited kissing or body contact with female employees and clients. Complaint was also made of Sherman's poor personal hygiene and inappropriate and unwashed clothes. On August 29, 1979, Sherman was counseled to stop such conduct at Ft. McCoy.

On October 15, 1979, Sherman pleaded guilty to the indecent liberties charge. On January 10, 1980, he was sentenced to four years probation under court supervision. The conviction and sentencing were widely covered in the local press. Each of the three local newspapers ran two articles, one following the guilty plea, and another on the imposition of sentence. All six of the articles mentioned Ft. Sheridan and the petitioner's employment there. One paper ran the article under the headline "Ft. Sheridan Counselor On Probation For Indecent Liberties With Girl, 11."

On February 20, 1980, Sherman's superior at Ft. Sheridan sent him a notice of proposed removal. The notice stated two grounds of discharge: (1) "infamous and notoriously disgraceful conduct," on the basis of the off-duty conduct, and (2) "improper, indecent and unprofessional conduct," on the basis of the on-duty conduct. The lengthy and detailed explanation of the charges included summaries of the proceedings before the court, the contents of the newspaper articles, and the affidavits of Sherman's complaining co-workers. Copies of the newspaper articles and the affidavits were also attached to the notice.

The notice of proposed removal informed the petitioner that he had fifteen days in which to respond, and granted him eight hours of official time in which to prepare such response. Sherman responded to the notice on February 24, 1980. His response did not deny the conduct complained of, but rather offered several points in rebuttal. Sherman claimed that: (1) the proposed removal was in retaliation for a complaint he had filed against his supervisor, and that since he had filed his complaint he had been under undue job pressure which contributed to his conduct resulting in the indecent

---

* Judge Sprecher heard oral argument and participated in the conference which followed. He died May 15, 1982, and did not participate in the preparation or approval of this Opinion.

liberties charge; (2) the reasons in the proposed notice did not substantiate a claim of ineffective job performance; (3) the newspaper articles were not detrimental to the Army; (4) he was not apprised of the complaints about his behavior while on assignment at Ft. McCoy; and, (5) his allegedly indecent comments and touching were misinterpreted gestures of friendship. Finally Sherman pointed to his long period of honorable and satisfactory job performance.

On March 24, 1980, Sherman received a notice of removal, referring to the charges detailed in the notice of proposed removal, and informing him of his right to appeal to the MSPB. The petitioner appealed to the Chicago field office of the MSPB. A two-day hearing was held on June 6 and 7, 1980. In support of the first charge the Army presented copies of the warrant for Sherman's arrest; the indictment; and a transcript of the state court proceedings of October 15, 1979, at which Sherman had pleaded guilty to a detailed statement of the crime. The Army also presented the eight articles from the three local newspapers detailing the incident. In support of the second charge, the Army introduced thirteen affidavits from individuals who had worked with the petitioner at Ft. McCoy, and evidence that it had confronted him with those affidavits and counseled him about the subject of the complaints; and affidavits and testimony of Sherman's co-workers at Ft. Sheridan. Sherman introduced testimony and affidavits of several individuals to the effect that they had not seen him behave in an indecent manner towards women or dress in inappropriate, unwashed, or unpressed clothes.

The MSPB hearing examiner found that both charges were supported by the preponderance of the evidence as required by 5 U.S.C. § 7701(c)(1)(B) (Supp. III 1979), and 5 C.F.R. § 1201.56(a)(ii) (1982). She then turned to determination of whether the petitioner's removal would promote the efficiency of the service as required by 5 U.S.C. § 7513(a) (Supp. III 1979), and 5 C.F.R. § 752.403(a) (1982). In considering the first charge, the examiner noted that where off-duty conduct is used as the basis for removal, there must be a "nexus" between the misconduct and the ability of the agency to perform its mission, to satisfy the efficiency of the service requirement. She rejected the Army's argument that this conduct was so abhorrent as to constitute a per se nexus, but concluded on the basis of the evidence that the agency had been subject to adverse publicity as a result of the misconduct, and that the misconduct was of the type likely to arouse public indignation. Further, she found that the agency showed that Sherman's actions "had an adverse impact on other employees on the job and on the effective functioning of the Education Center and that this hinders the agency's ability to perform its mission."

The examiner therefore affirmed the removal on the first ground.

In considering the second charge, the examiner noted that the thirteen affidavits from Ft. McCoy personnel had already been the basis of a counseling session with the petitioner and that they could not be used to support a new and distinct disciplinary action against him. She found, therefore, that only the affidavits and testimony concerning the incidents at Ft. Sheridan could be used to support the second charge, and that while some of that evidence related to the offensive on-the-job conduct, the greater proportion of it related to the petitioner's manner of dress, and that there was no evidence of the dress irregularities recurring after the petitioner was counseled about them. She therefore determined that there was insufficient basis on which to conclude that removal on the second charge would promote the efficiency of the service. On the basis of her affirmance of the first ground, the hearing examiner concluded that removal of the petitioner was for such cause as would promote the efficiency of the service. The petitioner appealed from that ruling to this court on the basis that the Board's decision is arbitrary, capricious, unsupported by substantial evidence, and contrary to law.

## II.

The appropriate standard of review of decisions of the Merit Systems Pro-

tection Board is set forth by statute, and provides that this court shall hold unlawful and set aside any agency action, findings, or conclusions found to be

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (Supp. III 1979). Turning first to the petitioner's contention that the removal for off-duty misconduct was not supported by substantial evidence, it is well settled that any agency must make two separate determinations before removing an employee on that ground: (1) that the employee actually committed the conduct complained of; and (2) that removal based on the misconduct will promote the efficiency of the service. *Young v. Hampton*, 568 F.2d 1253, 1257 (7th Cir. 1977). The latter requirement is usually framed as requiring a "nexus" between the misconduct and the efficiency of the service. *Bonet v. United States Postal Service*, 661 F.2d 1071, 1074 (5th Cir. 1981); *Cooper v. United States*, 639 F.2d 727, 729 (Ct.Cl. 1980); *Young*, 568 F.2d at 1261. The nexus determination requires a showing of "that vital connection between the employee's complained of activities and some identifiable detriment to the efficiency of the service ...." *Young*, 568 F.2d at 1261.

A. *Was the finding that Sherman committed the conduct complained of supported by substantial evidence?*

■ As noted above, the Army presented copies of the warrant for the petitioner's arrest, the indictment, a transcript of the proceedings at which Sherman pleaded guilty to a highly detailed statement of the charge, and eight articles from three local newspapers detailing Sherman's involvement from start to finish. The hearing examiner concluded that this was sufficient to support a finding that the petitioner had in fact committed the acts complained of by a preponderance of the evidence. We agree.

■ The petitioner points out that in reaching its conclusion, the Board noted that he had presented no defense to the merits of the first charge. He contends that the Board thereby shifted the burden of proof on the question of whether the petitioner had in fact committed the complained of misconduct to the petitioner, and required him to prove, in effect, that he had not committed the misconduct. This is a nugatory contention where, as here, the petitioner's commission of the crime is a matter of public record, and has not been contested at any point in the proceedings. An agency is not required to conduct a new trial before a hearing examiner when the occurrence of the misconduct has already been admitted in a guilty plea and the public record of those proceedings is before the Board. *Cf. Cooper*, 639 F.2d at 729–30 (evidence of misconduct consisting merely of arrest records, witness interviews, and information on why no charge was filed held insufficient factual basis for finding that misconduct occurred). We therefore conclude that the Board's finding that the off-duty misconduct had actually occurred, is supported by substantial evidence, and in accord with the procedural requisites of 5 U.S.C. § 7701(c)(1)(B) (Supp. III 1979).

B. *Was the finding of a nexus between the off-duty misconduct and the efficiency of the service supported by substantial evidence?*

The MSPB examiner determined that the evidence fully supported a finding of sufficient nexus between the indecent liberties charge and the efficiency of the service. She ruled that there were four grounds on which such a nexus could be found: (1) the morale problems within the petitioner's office created by the combination of the petitioner's off-duty conduct and his on-the-job behavior; (2) the impairment of office operation caused by the same combination; (3) the notoriety and publicity surrounding the incident which reflected adversely on the agency; and (4) the adverse publicity related to misconduct likely to provoke public indignation.

■ The hearing examiner's first ground was the disruption of office morale created by the combination of off-duty conduct and on-the-job harassment. When the combination of off-duty conduct and on-duty behavior leads to disruption of employee morale, a sufficient nexus to support removal exists. *Schlegel v. United States*, 416 F.2d 1372, 1378 (Ct.Cl.1969), *cert. denied*, 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970); *see Young*, 568 F.2d at 1260; *Norton v. Macy*, 417 F.2d 1161, 1166 (D.C.Cir. 1969). The record before the MSPB is replete with evidence of the petitioner's sexually offensive conduct toward others while on the job, and with evidence that the combination of these improper on-the-job advances and the off-duty episode created fear, mistrust, and disruption of morale.

■ The hearing examiner carefully reviewed the testimony and affidavits of the petitioner's co-workers at Fts. McCoy and Sheridan, and summarized the repeated instances of offensive overtures alluded to both in the live testimony of three witnesses and in the affidavits of eight others. The examiner further made specific note that one affiant stated that the petitioner's conduct was even more offensive the summer following his arrest than it had been in previous summers, and that another witness testified that following Sherman's arrest his conduct made her even more uncomfortable around him than it had previously. We hold that this constitutes substantial evidence supporting the hearing examiner's finding of a nexus between the off-duty conduct and office morale. Certainly Sherman's fellow employees would be justified in placing a new, more meaningful interpretation upon remarks which, although offensive, might previously have been tolerated or dismissed. The atmosphere of fear and mistrust engendered by the combination of the indecent liberties conviction and the harassing commentary and contacts is inherently disruptive of office morale to such extent that it constitutes an impairment of the efficiency of the service.

■ The second ground relied on by the examiner was that the conviction impaired the operation of the office. This was based on testimony that following Sherman's conviction several clients asked to be counseled by others rather than Sherman, thereby placing a heavier burden on other counselors, and on Sherman's supervisor in assigning work. Furthermore, because it was requested that the petitioner not be reassigned to Ft. McCoy for temporary duty in light of his effect on that office, he had to be removed from that rotation, thereby placing an increased burden on the other counselors, and again impairing office efficiency. This ground too is supported by testimony and affidavits sufficient to satisfy the substantial evidence requirement of § 7703(c)(3).

■ The third ground relied upon by the hearing examiner was that the notoriety and adverse publicity surrounding the incident reflected adversely on the Army. This finding was based upon the eight newspaper articles which had appeared in the local press. The hearing examiner specifically relied on the evidence that six of the articles mentioned Sherman's employment at Ft. Sheridan, some quite prominently, and that witnesses testified that they and the general public in the area would equate a Ft. Sheridan employee with a government employee. The hearing examiner also found that the incident was common knowledge in the community, based on testimony and affidavits presented by both sides, and that the publicity was adverse, on the basis of the testimony of witnesses at the hearing and the nature of the crime.

The petitioner contends that this finding of adverse publicity is not supported by sufficient evidence, and that even if it is, it creates merely an "institutional discomfiture" which does not rise to the level of the requisite nexus with the efficiency of the service. We think it is quite clear that the above-mentioned evidence of notorious publicity in the community linking the petitioner to Ft. Sheridan supports the Board's conclusion that there was publicity which reflected poorly on the Army. We turn therefore to determination of whether such adverse publicity concerning off-duty mis-

conduct can sufficiently impair the efficiency of the service to justify removal.

█ In *Wathen v. United States*, 527 F.2d 1191, 208 Ct.Cl. 342 (1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976), an IRS agent who had shot and killed his mistress but was acquitted on insanity grounds, was removed from his job. Five articles appeared in three local newspapers; two carried Wathen's picture. The court upheld Wathen's removal, and noted with respect to the articles:

> The mere existence of such accounts, including as they did pictures of plaintiff and his victim and headlines emphasizing his employment with IRS, was substantial evidence from which the agency, and ultimately the Civil Service Commission, were entitled in their discretion to conclude that plaintiff's conduct brought discredit upon his employer. Therefore, on both issues—the fact of the shooting and consequent discredit to IRS—the record exhibits substantial evidence.

527 F.2d at 1199. The fact that no picture of the petitioner accompanied the publicity in the instant case does not sufficiently distinguish it from *Wathen*. The stories and headlines linking the petitioner's reprobate conduct to Ft. Sheridan were a sufficient basis on which to find a nexus between the misconduct and the efficiency of the service under the *Wathen* rationale.

Petitioner relies on language from *Norton v. Macy*, 417 F.2d 1161, 1167 (D.C.Cir. 1969), for the proposition that "transitory institutional discomfiture," is insufficient cause for discharge to promote the efficiency of the service. In that case, a NASA employee was accused by the agency of homosexual off-duty conduct, on the basis of information obtained by the agency at an in-house interrogation. There was no arrest, no conviction, and no publicity. In reversing the petitioner's removal, the *Macy* court specifically distinguished its facts from the type of situation presented here: "If an employee makes offensive overtures while on the job, or if his conduct is notori-

ous, the reactions of other employees and of the public with whom he comes into contact in the performance of his official functions may be taken into account." 417 F.2d at 1166. We conclude that the finding that Sherman's conduct was sufficiently notorious to impair the efficiency of the agency by bringing Ft. Sheridan into disrepute was supported by substantial evidence on the record, and is a legally sufficient basis for removal.

As a final ground for affirming the petitioner's removal, the hearing examiner relied on *Gueory v. Hampton*, 510 F.2d 1222, 1229 (D.C.Cir.1974) (Bazelon, J.) (Statement as to why case should be reheard en banc), for the proposition that a nexus is established when the off-duty crime is one likely to arouse public indignation. This is apparently merely a rephrasing of the preceding ground, notoriety which would impair the efficiency of the service, and is supported by the evidence to the same extent as is that ground, see *supra*. We conclude, therefore, that the MSPB's conclusion that there was a sufficient nexus between Sherman's off-duty misconduct and the efficiency of the service is fully supported by the evidence of record, and turn to the petitioner's further assignments of error.

### III.

The petitioner's next assignment of error is that the Board's decision was arbitrary and capricious because it was based upon grounds not set out in the proposed notice of removal, and that the Board's finding that the proposed notice of removal was procedurally adequate was not supported by substantial evidence. We deal with this latter question first.

**A. *Was the notice of proposed removal procedurally adequate?***

The procedural requirements for removal of a non-probationary employee are set out at 5 U.S.C. § 7513(b) (Supp. III 1979) and 5 C.F.R. § 752 (1982). Section 7513(b)(1) requires 30 days advance written notice[1] stat-

---

1. The statute provides that the 30 day period may be reduced when there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed.

ing the specific reasons for the proposed action. Apparently the gist of the petitioner's argument is that because some of the affidavits concerning the on-duty misconduct contained hearsay, they did not meet the requisite standards of specificity and therefore violated the petitioner's procedural due process rights.

The purpose of the specificity requirement is "to allow the employee to make an informed reply," to the charges against him. S.Rep.No.95–969, 95th Cong., 2d Sess. 50, *reprinted in* [1978] U.S.Code Cong. & Ad.News 2723, 2772. The statutory language "the specific reasons," replaced the language "any and all reasons, specifically and in detail," and was amended in 1978, "to reduce the degree of detail now sometimes required in order to avoid reversal on procedural grounds." *Id.* The petitioner's reliance on cases decided under the old statute is therefore, misguided, insofar as that statute imposed a higher requirement of specificity. *See, e.g., Money v. Anderson,* 208 F.2d 34 (D.C.Cir.1953); *Schlegel v. United States,* 416 F.2d 1372 (Ct.Cl.1969), *cert. denied,* 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970).

In this case, however, the proposed notice of removal was sufficiently specific to satisfy the due process requirements of either standard. The notice substantiated both charges in such detail that the petitioner would know and be able to refute the charges lodged against him. The first charge was substantiated by a detailed description of Sherman's conduct on which the indecent liberties charge was based, and by a summary of the newspaper articles reporting that conduct. The second charge was substantiated by a detailed summary of the affidavits reporting the offensive conduct on which the charge was based, the names of the complaining witnesses, and the dates and places at which the conduct occurred.

The petitioner contends, however, that because the affidavits contain matters he characterizes as "hearsay from unidentified sources," they leave the petitioner unable to determine precisely what conduct might have offended someone, who the conduct might have offended, or when the conduct occurred. This leaves him, he claims, in the position of the petitioner in *Money v. Anderson,* 208 F.2d 34 (D.C.Cir.1953), who was removed following a notice of proposed removal which specified certain on-duty conduct with unnamed women employees, and off-duty conduct with unnamed girls in their teens. No affidavits supporting the allegations gave further details of the conduct. We note preliminarily that, even if we accept the petitioner's hearsay characterization, which is apparently based on the contention that some of the statements are unsworn, the admissibility of such evidence is settled beyond dispute in administrative proceedings. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Borninkhof v. Dept. of Justice,* No. SF072509008 (MSPB Feb. 27, 1981). Furthermore, the notice of proposed removal is rife with specific details such as names, dates, places, and the precise conduct complained of, to the point where the petitioner's assertion to the contrary is essentially frivolous. Indeed, the petitioner concedes that at least four of the affiants provided details of the requisite specificity. In light of the foregoing, the Board's conclusion that the proposed notice of removal satisfied the dictates of due process is clearly supported by the record.

B. *Did the notice of proposed removal set out all the reasons upon which removal was ultimately based?*

Sherman also contends that because the nexus between his off-duty misconduct and the on-duty sexual remarks and conduct was not raised in the proposed notice of removal and not argued to the hearing examiner by the Army, the hearing examiner's reliance on the on-duty conduct as demonstrating a nexus with the off-duty conduct violated the petitioner's due process rights, and was therefore arbitrary and capricious and in violation of law. He relies on *Albert v. Chafee,* 571 F.2d 1063 (9th Cir.

1978), for the proposition that, "[t]he agency may not . . . rely on reasons which were not stated in the original notice." 571 F.2d at 1066, (quoting Federal Personnel Manual, ch. 752 § 2–6). In *Chafee*, however, the agency had relied not on an unbriefed legal theory, but rather on additional facts which had not been disclosed in the notice of proposed removal. Sherman, however, had complete notice of all facts upon which his removal was predicated: no previously unmentioned charges were used to support his removal. He thus had fair notice and an opportunity to respond to the proposed notice of removal and to present his case to the MSPB.

Furthermore, in light of the other independently sufficient bases for the nexus relied on by the hearing examiner, see *supra*, any such error would be harmless in any event.

### IV.

We have examined the other contentions and arguments of the petitioner and find them to be without merit. In accord with all the foregoing reasons, the decision of the Merit Systems Protection Board is affirmed.