**Dimas BONET, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

No. 82–4250
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 19, 1983.

---

Armando Peralta, Gus Rallis, El Paso, Tex., for petitioner.

Stephen E. Alpern, Associate Labor Counsel, Office of Labor Law, United States Postal Service, Washington, D.C., John C. Oldenburg, Memphis, Tenn., Alexander Younger, U.S. Dept. of Justice, Washington, D.C., for respondent.

Evangeline W. Swift, Gen. Counsel, MSPB, Kathleen Day Koch, Washington, D.C., for intervenor, Merit Systems Protection Bd.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

PER CURIAM:

Dimas Bonet appeals a decision of the Merit Systems Protection Board (the Board)[1] which sustained his discharge from employment with the United States Postal Service (the Postal Service) because of grossly immoral off-duty conduct.[2] Finding substantial evidence to support the conclusion that Bonet's removal will promote the efficiency of the Postal Service, this Court affirms the action of the Board.

A more detailed factual expose is found in this Court's prior opinion, *Bonet v. United States Postal Service,* 661 F.2d 1071 (5th Cir.1981) (hereinafter *Bonet I*). Briefly, petitioner Bonet, manager of an El Paso, Texas Post Office Branch Station, was discharged from the Postal Service on November 28, 1979, on the basis of charges of sexually indecent conduct with his minor stepdaughters. An El Paso paper included Bonet's name in a list of twenty-two persons indicted by a grand jury. Bonet's indictment was based on an alleged indecent act with his eleven-year-old stepdaughter. The indictment was later dismissed due to the mother's unwillingness to prosecute and a family reconciliation.

Bonet appealed the Postal Service decision to the Board, which affirmed the removal action. Bonet then appealed to this Court which reversed the Board's affirmance of the agency action and remanded. *Bonet I,* 661 F.2d at 1071, 1079. This Court stated that under the Civil Service Reform Act of 1978 (the 1978 Act) the agency may discharge an employee for misconduct only if the agency determines that (1) the employee, in fact, committed the misconduct[3] and (2) the employee's discharge, based on the misconduct, will promote the efficiency of the Service. *Id.* at 1074. In reversing, this Court found that there was not substantial evidence to support the conclusion that Bonet's removal would promote the efficiency of the Postal Service. This Court stated that the agency had made no attempt to prove any nexus between Bonet's misconduct and the efficiency of the Service; that nexus can be established by showing that the misconduct adversely affects the effective performance of the em-

---

1. Pursuant to 5 U.S.C. § 7703(b)(1) a petitioner may appeal any final decision of the Board to this Court provided the petition for review is filed within 30 days after the date the petitioner received notice of the final order or decision of the Board. The Federal Courts Improvement Act of 1982, vesting appellate jurisdiction in the United States Court of Appeals for the Federal Circuit, does not apply to this case because the effective date of the Act was not until October 1, 1982. Bonet filed his petition for review with this Court on July 6, 1982.

2. The Board's decision came on remand from a decision of this Court, *Bonet v. United States Postal Service,* 661 F.2d 1071 (5th Cir.1981), which set aside the Board's affirmance of the agency's discharge of Bonet for lack of evidence that Bonet's discharge would promote the efficiency of the Service.

3. The Court did not discuss this determination, as Bonet did not appeal the agency's finding that he committed the conduct charged.

ployee or his co-employees.[4] *Id.* at 1077–78 & n. 10. The Court further found that the Board could not, either by presumption or application of a per se rule, shift the burden of proof to the employee to show that his continued employment would not affect the efficiency of the Service. In other words, the 1978 Act does not permit the Board to characterize even grossly immoral off-duty conduct as establishing, per se, a nexus between the misconduct and the efficiency of the Service. *Id.* at 1077–78.

On remand, the parties were offered the opportunity for another hearing but both Bonet and the Postal Service chose to make further submissions solely by affidavit and written memoranda. Pursuant to criteria outlined in *Merritt v. Department of Justice,* Merit Systems Protection Board, NO. PH075209058 (June 8, 1981), the Board applied a nexus presumption arising from "egregious circumstances"—the nature and gravity of the misconduct. The Board then determined that Bonet had provided sufficient evidence to show an absence of adverse effect of his misconduct on Service efficiency and had therefore successfully rebutted the presumption of nexus. Without any reliance on the presumption, the Board then required the Postal Service to come forward with evidence to prove nexus. After reviewing the affidavits proffered by the agency, the Board concluded that the Postal Service had carried its burden of establishing nexus by demonstrating that the work performance of some of Bonet's superiors and subordinates would be adversely affected if Bonet were reinstated.

On appeal to this Court, Bonet claims that (1) the Board erred in shifting the burden of demonstrating nexus to him and (2) there was not substantial evidence that his reinstatement would adversely affect the Service. Regarding Bonet's first contention, this Court finds it unnecessary to decide whether the Board erred in applying a rebuttable presumption of nexus. Assuming, *arguendo,* that the Board did err, any error was harmless. The Board clearly found that Bonet had rebutted the presumption and required the agency to "come forward with evidence to carry its burden of proving nexus." *Merritt,* at 8.

Bonet's second contention—that the agency failed to show by substantial evidence on the record[5] that Bonet's removal, based on his misconduct, would promote the efficiency of the Service—merits careful consideration. The controlling regulation permits discharge if "conduct of the individual may reasonably be expected to interfere with or prevent effective performance by the employing agency of its duties and responsibilities." 5 C.F.R. § 731.202(a)(2) (1983). In *Bonet I,* this Court stated that an adverse influence on the work of other employees is a factor to be considered in making the above determination. We remanded the case to the Board, with leave to remand to the agency, to allow additional evidence on this factor. On remand, the Postal Service submitted affidavits of Agency employees who stated that Bonet's return to work would affect their job performance adversely. In deciding whether there is substantial evidence on the record to support the Board's decision to discharge Bonet, this Court must consider not only whether the evidence of "adverse effect" exists but also whether it is reasonable to base discharge upon such evidence. The objective standard which the agency must meet includes three factors: (1) whether it has been shown that misconduct adversely

---

**4.** The 1978 Act provides that, absent criminal conviction, an employee may be discharged only for misconduct that adversely affects the performance of the employee himself or of other employees. 5 U.S.C. § 2302(b)(10).

**5.** 5 U.S.C. § 7703(c) provides for the scope of judicial review of Board decisions:

(c) In any case filed in the United States Court of Claims or a United States court of appeals, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—
(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(2) obtained without procedures required by law, rule, or regulation having been followed; or
(3) unsupported by substantial evidence;
. . . .

affects the Service in fact, (2) whether conduct of this kind could reasonably be expected to cause that sort of adverse reaction, and (3) whether permitting a discharge on such evidence or for such misconduct violates any other legal policy.[6] Each of these three factors must be satisfied. For example, if there is in fact no adverse impact, even though the impact might have been expected, discharge is not permissible. If, on the other hand, there is adverse impact, but not of a reasonably-to-be-expected kind, discharge is likewise not permissible. Similarly, if there is a reasonably-to-be-expected adverse effect but the adverse employee reaction is a mere pretext for discharge on an impermissible basis, such as race or sex, discharge is not justified.

We now turn to examine the affidavits submitted following remand. The Postal Service submitted affidavits of five agency employees who had worked under Bonet's supervision and who had heard of the charges against Bonet. Four of the five, two of whom are supervisors, stated that they had lost confidence in and respect for Bonet and would not be able to work effectively for him.[7] Various statements of these employees were that they would not be at ease with Bonet, that they would avoid asking him questions about work matters, and that his return to the Postal Service would damage the morale of the work force. The agency also submitted the affidavits of the Postmaster of the El Paso Post Office, the Manager of Station Operations, and the Director of Employee & Labor Relations. The Postmaster clearly stated his reasons that Bonet's reinstatement would be detrimental to the efficiency of the Postal Service. The Postmaster indicated that he would experience extreme difficulty in communicating with Bonet and would not trust his judgment. The Postmaster further stated that, based upon his conversations with other managers, he believed that they too would experience great difficulty in dealing with Bonet. The Man-

ager of Station Operations expressed his judgment that employees must have confidence in the integrity of the Station Manager for the manager to be effective and that Bonet's return would impair discipline and productivity. The Director of Employee and Labor Relations for the El Paso Sectional Center attested to the general knowledge among postal employees and managers of Bonet's indictment and dismissal from his position and to the postal community's belief that Bonet's dismissal resulted from the charges in the indictment.

On his behalf, Bonet submitted twelve affidavits, including his own and that of his wife. In addition, he submitted affidavits of two Union officials who stated on behalf of their associations that Bonet's reinstatement would not cause any disciplinary or morale problems with the employees or interfere with the effective performance by the Postal Service of its duties and responsibilities. The last eight affidavits were identical and were submitted by eight non-supervisory employees. They stated that Bonet's reinstatement would have no effect on their ability to work with Bonet in the performance of their duties.

■■■ The affidavits of the Postal Service and the affidavits submitted by Bonet were, of course, conflicting on this crucial issue. Even so, the record provides substantial evidence to support the Board's decision. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Brewer v. United States Postal Service,* 647 F.2d 1093 (Ct.Cl.1981). This Court may not reweigh the evidence or substitute its own judgment for that of the Board even if this Court finds that the evidence preponderates against the Board's decision. *Warncke v. Harris,* 619 F.2d 412, 416 (5th Cir.1980). Unquestionably, a reasonable person might

---

**6.** Bonet's subsequent reform, attested to by his wife, is not a factor to be considered in whether this objective test is satisfied.

**7.** One of the supervisors' statements was conditioned on Bonet's being found guilty by competent authority and on the supervisor's knowledge of that finding.

accept the affidavits submitted by the Postal Service, in light of the objective standard, as adequate to support a conclusion of nexus between Bonet's misconduct and the efficiency of the Service.[8] The first prong of the objective test, the "adverse effect in fact," is satisfied. In this case, the second or reasonableness prong is also satisfied. Given the alleged sexual misconduct with a minor, the "adverse effect on efficiency" impact was of the kind "reasonably to be expected." Finally, the third prong presents no problem under the circumstances of this case—there is no evidence that the adverse reaction represents a mere pretext for discharge on an impermissible legal basis. Bound by the substantial evidence standard of review, this Court cannot deem insubstantial the evidence supporting the Board's determination that Bonet's conduct with his stepdaughter would affect the ability of other employees to work effectively with Bonet and would therefore adversely affect the operation of the Postal Service.

The decision of the Board sustaining Bonet's removal from the Postal Service is affirmed.

AFFIRMED.

JERRE S. WILLIAMS, Circuit Judge, dissenting:

I regret I cannot agree with my colleagues in this case and must file a dissent. Because oral argument was waived, disposition on the summary calendar does not require the unanimity of all members of the panel. U.S.Ct. of App., 5th Cir., Local Rule 34.3.

I cannot conclude that this employee of twenty two years with a clear prior record in his employment with the United States Postal Service, holding a responsible managerial position, must have his career destroyed by acts committed during what we must assume was a mental illness which has been cured. On this record we must accept the affidavit of Bonet's wife that he has been totally cured or reformed, because that is the only evidence in the record on this point.

What we have here is an employee who was discharged for private illegal conduct, having no direct connection with the Postal Service. His conduct admittedly is conduct which society abhors, the sexual molestation of a step-daughter. He was not convicted in criminal court of this offense, but we must accept the fact that he committed the offense as having been proved by a preponderance of the evidence in the dismissal proceedings in the Postal Service.

The evidence in the record that his past abhorrent conduct affects the efficiency of the Postal Service consists of a number of affidavits of fellow employees and supervisors who state in effect that they would feel squeamish working alongside him knowing of his past conduct. I accept those affidavits at face value, although I must comment it is very difficult for an employee not to give such an affidavit when confronted with a superior who indicates that he or she is trying to build a case against an employee for this particular kind of misconduct. So also it should be recognized that

---

**8.** Bonet charges that seven of the affidavits submitted by the Postal Service have been altered, raising questions as to their conditionality. In a statement submitted by the Board, it clarified the reasons that the original administrative record contained these dark smudges— they were the result of photocopying on a particular make of photocopier which copied yellow highlighting as smudges. The Board had the original affidavits rephotocopied on a different copier and had these copies certified by the Secretary and attached for the convenience of this Court. These certified copies are perfectly legible and demonstrate that only two affiants' statements were in any way conditional. The Station Operations Manager, Mus-grave, indicated that if Bonet were later determined to be guilty of the charge for which he was arrested, Musgrave would lose all respect, both personal and professional for Bonet. Similarly, employee Ramos stated that if Bonet were ultimately found guilty of the misconduct by competent authority and if Ramos learned of that finding of guilt, he could not work effectively for Bonet. The agency made a finding that Bonet in fact committed the alleged misconduct, which finding Bonet did not appeal. Bonet was therefore found guilty by competent authority. Even dispensing with the affidavits of these two men, however, there is still substantial evidence to support the conclusion of the Postal Service.

the union was successful in obtaining a number of countering affidavits.

The critical point in this case, however, is Bonet's total reform which we must accept on the record. If we allow the kind of evidence that these affidavits present to establish a nexus between private serious illegal conduct and impact upon the Postal Service, it means we sanction fellow employees justifying the discharge of, or refusal to hire, any obviously reformed malefactor or a totally cured former mental patient who committed an offense in the past. On the basis of this record I cannot escape the conclusion that the tension the other employees indicate they would feel working around this employee is based upon what they personally might feel to be particularly abhorrent conduct. Yet a drunk driver who caused the death of a child in an automobile accident, although never convicted and now a totally reformed person who never touches alcohol, would be subject to the same kind of "veto power" by the other employees stating they would feel tension or be squeamish to have him working alongside. What my brothers are sanctioning in this case is a fellow employee veto over the total reform or the total recovery of someone who has committed an offense in the past. I cannot read the statute or the regulations as sanctioning such a veto.

There is a proper kind of evidence in a case of this nature to establish the connection required by law. For example, if there were evidence that appellant was not wholly reformed or that reform was in question, that would be a different case. So also would evidence that the prior indictment itself brought the Postal Service into public disrepute. *Wathen v. United States,* 527 F.2d 1191, 1199 (U.S.Ct.Cl.1976). If the evidence showed an employee's absence for treatment of a mental disorder actually placed an additional burden on other employees, the nexus with the work would be established, *Sherman v. Alexander,* 684 F.2d 464, 469 (7th Cir.1982), so also if off-duty conduct was combined with on-the-job harassment of other employees by the disciplined employee. *Ibid.*

It is wholly unacceptable to me to conclude, as my brothers do conclude, that total reform or mental cure has no relationship to an objective standard connecting the Postal Service with an otherwise unconnected matter of improper personal conduct. It is also contrary to the regulations which provide that one of the factors to be taken into account is the reform of the individual.

The uncontested affidavit establishing appellant's reform or cure was made by appellant's wife at approximately the same time as the affidavits of the other employees. The case for discharge presented to the Merit Systems Review Board for decision, therefore, included an uncontested showing that Bonet was totally reformed or cured. Reform or cure is inescapably relevant to the objective substantial evidence determination as to whether "the 'adverse effect on efficiency' impact was of the kind 'reasonably to be expected'".

The evidence does not meet the objective standard required by the law to justify discharge of appellant on the facts and circumstances of this case.