Russel L. AHR, Plaintiff,

v.

Alan C. NELSON, Commissioner of the United States Immigration and Naturalization Service, and the Immigration and Naturalization Service, Defendants.

Civ. A. No. L–84–91.

United States District Court, S.D. Texas, Laredo Division.

Nov. 27, 1985.

David T. Lopez, Houston, Tex., for plaintiff.

Samuel G. Longoria, Asst. U.S. Atty., Houston, Tex., and William Eugene Storie, Asst. Atty. Gen., Tax Div., Austin, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

KAZEN, District Judge.

This case is an appeal from a decision of the Merit Systems Protection Board (MSPB) which affirmed a decision of the Immigration and Naturalization Service, removing Plaintiff Ahr from his position as an Immigration Inspector because of off-duty misconduct culminating in a criminal conviction. Pending before the Court is Plaintiff's motion for summary judgment.

Plaintiff makes a two-pronged attack on the administrative decision. First, he claims that his discharge was in violation of his rights as a "handicapped individual" under the Rehabilitation Act of 1973, 29 U.S.C. § 791. Second, he alleges that the discharge was obtained without proper procedures, that the decision was unsupported by substantial evidence, and that the decision was arbitrary and capricious. *See*, 5 U.S.C. § 7703(c). The claim under the Rehabilitation Act makes this a "mixed" case, so that Ahr's appeal is properly filed in this Court rather than in the United States Court of Appeals for the Federal Circuit. *Williams v. Department of the Army*, 715 F.2d 1485 (Fed.Cir.1983).

There is virtually no dispute as to the underlying facts. On August 29, 1981, Ahr was on temporary assignment to the Cuban Processing Center at the United States Penitentiary in Atlanta, Georgia. At that time, he had been an Immigration Inspector for approximately four years. While off duty in College Park, Georgia, he had been swimming and drinking with a girlfriend. The two had an argument of some kind and Ahr took the girl home at her request. Driving back to his apartment at approximately 8:30 p.m., he saw a girl and, according to him, "at the time I couldn't have told you if she was 12 or 16 or 26, and to be quite frank with you, I think I for some reason thought she was my girlfriend." TR. 101. He then threw out of his car and towards the girl some undescribed "obscene material." In fact, the girl was not Ahr's girlfriend, but was a twelve-year-old female. Ahr was arrested and charged in the State Court of Fulton County, Georgia with a misdemeanor that he "knowing the obscene nature thereof, did give, exhibit, show and disseminate obscene photographs to another person." The charge was not actually filed until April 2, 1982. On May 12, 1982, Ahr pled guilty to the offense "in absentia". He was fined $750.00 and given a jail sentence of twelve months. The confinement, however, was suspended on condition that Defendant not again violate the laws of Georgia and "not to return to Ga." The judgment does not specify the length of time during which the suspended sentence and its accompanying conditions were to remain in effect.

Richard E. Norton, then the Deputy District Director for INS in San Antonio, first learned of Ahr's arrest in either late August or early September, 1981. He contacted Mitchell Britt, the INS Officer in Charge in Laredo, and directed Britt to place Ahr on restricted duty. This meant that Ahr performed all of his usual prior duties except that he was not allowed to work the midnight shift at the International Bridge nor work at the airport. The purpose of this restriction was to prevent him from working alone.

On June 29, 1982, Norton addressed a letter to Ahr, proposing to remove him from his position. The letter briefly recited the basic facts surrounding Ahr's conviction and then essentially lodged three charges against Ahr:

1. That the "offense of which you have been convicted shows that your supervisor can no longer depend on you to be alone in the company of aliens, particularly minors";

2. That Ahr's criminal record could be used "to impeach your credibility as a witness at trial"; and

3. That the criminal record "could have a deleterious effect on the Service's reputation with other law enforcement agencies."

Ahr then invoked his right to present his version of the matter to Richard M. Casillas, the District Director of INS in San Antonio. On August 16, 1982, Casillas advised Ahr by letter that he had carefully considered Ahr's response but had decided that "your removal is warranted."

Ahr then appealed to the MSPB and an evidentiary hearing was conducted on May 27, 1983. After the hearing, on August 5, 1983, the Presiding Official rendered a written decision affirming the agency's action. The MSPB denied review on September 21, 1984.

The Court will first consider Ahr's general evidentiary attack on the administrative decision. In so doing, this Court is directed to set aside any agency action found to be unsupported by substantial evidence; arbitrary, capricious or an abuse of discretion; or obtained without procedures required by law. 5 U.S.C. § 7703(c). In considering whether the decision was "arbitrary and capricious," the Court must decide whether it was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). "Substantial evidence" is more than a scintilla and less than a preponderance, and is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Green v. Schweiker*, 694 F.2d 108, 110 (5th Cir.1982).

The Federal Government may discharge its employees only for such cause as will promote the efficiency of the service. 5 U.S.C. § 7513(a). Disciplinary action may be taken only on the basis of conduct that adversely affects the performance of the employee himself or of other employees; the agency may, however, consider any criminal conviction of the employee. 5 U.S.C. § 2302(b)(10). The statutory scheme requires the agency to establish a "vital nexus" between the alleged misconduct and the efficiency of the service. *Bonet v. United States Postal Service*, 661 F.2d 1071 (5th Cir.1981).

The finding of such nexus by the Presiding Official was primarily based on the testimony of Don L. Riding, the Supervisory Immigration Inspector in Charge at the Port of Laredo. Riding first testified that an Immigration Inspector is frequently alone with the person he is inspecting. He then expressed the conclusion that an Inspector convicted of disseminating obscene photographs to another person could not be "trusted" to be alone with an alien, particularly a female alien. TR. 13. He also explained that the INS Inspectors work with other agencies at the bridge, and that if any of those agencies learned that an Inspector had been convicted of such an offense, they "could withdraw the cross-designation" arrangement that exists among the various agencies. TR. 15. On cross examination, however, Riding stated that the occasions when an inspector is alone with an alien would actually be "a very small percentage." TR. 24. He further expressed concern that if the general public were to hear of the conviction "it would not look good." TR. 25. He testified that he did not know Ahr personally, nor of his record. Omar Bangs, the Assistant District Director for Travel Control for the San Antonio District of INS, also expressed the conclusion that, because of the

conviction, he could not "trust or depend on Ahr in the company of female immigrants." TR. 39. He further opined that the conviction would have an adverse effect "on the reputation of the service" if it became known to other government agencies. TR. 40. Richard Norton also concurred that he could no longer "trust" Ahr. Richard Casillas, who made the initial termination decision, seemed more concerned with the effect of the conviction on Ahr's credibility as a witness in exclusion hearings. He also expressed concern with what he apparently viewed as an indefinite banishment of Ahr from the State of Georgia and finally opined that if other government agencies learned of the conviction it "would be very embarrassing to the service." TR. 70.

It is undisputed from the record that Ahr had never been the subject of any other disciplinary action and that he had never been accused of any misconduct on the job. Mitchell Britt, his immediate supervisor, considered Ahr one of the better inspectors at the Laredo Port, above average in intelligence. TR. 85. Britt stated that, had he not been directed to do so, he would not have placed Ahr on restricted duty even after his conviction. TR. 87. He further testified that he personally lost no confidence in Ahr nor, to his knowledge, did any fellow employee. TR. 88–89. Ahr's supervisor during his Atlanta assignment gave him a glowing letter of commendation, praising his intelligence and initiative. During his entire career, Ahr had never been rated less than satisfactory in any aspect of job performance.

Shortly after the Georgia incident, Ahr consulted a psychiatrist, C.C. Barnhart of San Antonio, Texas. Casillas acknowledged that he had read a letter report of August 3, 1982 from Dr. Barnhart prior to making his decision. Among other things, Dr. Barnhart opined that Ahr's conduct was caused by a psychiatric disorder of neurotic rather than psychotic proportions. Dr. Barnhart stressed that Ahr's condition did not involve the potential act of engaging in sexual activity with a female victim and that the risk of creating any physical danger was "extremely minimal". Dr. Barnhart expressed the opinion that, because of Ahr's dedication to his therapy, he would not likely revert to such conduct in the future and should be able to continue his duties "without difficulty".

■ When a federal employee's alleged misconduct has occurred off duty, a reviewing court must require the federal agency to demonstrate that the employee's removal would promote the efficiency of the service. *Bonet v. United States Postal Service, supra.* Although the Fifth Circuit has specifically rejected the proposition that some off-duty misconduct is so obnoxious that it demonstrates a *per se* nexus with the efficiency of the service, *Id.* at 1077,[1] the INS appears to have taken a *per se* approach in this case. The officials who testified in support of Ahr's discharge based their opinions solely on the fact of his misdemeanor conviction. They had very little knowledge and seemingly even less interest in his work record, either before or after the incident, and virtually no weight was given to the opinion of the psychiatrist whom Ahr consulted. For that matter, apparently no weight was given to the opinion of Ahr's immediate supervisor, Mitchell Britt. The decision to discharge Ahr was based entirely on the conclusory testimony that, solely because of his conviction, Ahr could no longer be "trusted" and that his conviction, if publicized, would cause a loss of confidence in INS by other governmental agencies and the general public. However, a federal agency cannot satisfy its burden of proof "by use of unsupported, general assertions that such action is necessary to maintain the public confidence. To permit otherwise would be

---

**1.** The Court recognizes that the Court of Appeals for the Federal Circuit would apparently apply a *per se* rule for nexus, at least in cases involving "egregious circumstances." *Hayes v. Dept. of the Navy,* 727 F.2d 1535, 1539 (Fed.Cir.1984). However, this Court feels constrained to follow Fifth Circuit precedent and prefers the *Bonet* approach in any event. Moreover, even under the Federal Circuit approach, this Court would not place Ahr's crime within the "egregious" category.

to render nugatory the protections afforded the federal employee by the imposition of a standard for removal which requires a connection between employee misconduct (especially when off-duty and non-work related) and the job." *Bonet,* 661 F.2d at 1076–77.

■ Here, there is simply nothing to support the conclusion that because Ahr once threw undescribed "obscene" material at a female while off duty, he would be a threat to female aliens while on duty. The officials who claimed they could no longer "trust" Ahr never even articulated what it is they feared he would do to a female alien.[2] While this Court certainly does not condone the dissemination of pornographic material under any circumstances, that offense would not reasonably be equated in severity with the offense of indecency with a child, the offense involved in *Bonet.* The argument that a man who on one off-duty occasion distributes pornographic material to a female can no longer be "trusted" in the presence of females thus seems even less valid than the rejected argument in *Bonet* that the indictment of a postal official for indecency with a child would undermine the public trust in postal employees necessary for the efficient collection and delivery of the mails.

The concern of Riding, Casillas, and others of potential embarrassment to the INS also cannot be accepted as the equivalent of promoting the efficiency of the service. *Norton v. Macy,* 417 F.2d 1161, 1167 (D.C. Cir.1969). Further, there was no evidence that Ahr's conviction actually had much potential to cause such embarrassment. There was no evidence that Ahr's misdemeanor conviction received any publicity even in Georgia, much less in Texas, and there was no indication in the court records that Ahr was even a federal employee. Moreover, as earlier observed, the charges

against Ahr apparently lay dormant for over seven months before even being filed.[3] The assertion that other federal agencies would henceforth refuse to work with Ahr is even more tenuous. No evidence was introduced to support this thesis. No evidence was introduced to establish that any other federal agency either knew or cared of Ahr's conviction, either before or after it occurred. No one from any other agency testified that Ahr's conviction, standing alone, would cause them to cease the practice of cross-designation, nor were any written policies or regulations to that effect introduced. The record simply contains the unsupported assertions of certain INS officials that all of this "could" happen.

The two other specific concerns articulated by the INS likewise fail to support the agency's action. The fear that Ahr's misdemeanor conviction could be used against him for impeachment purposes in federal tribunals was specifically abandoned by Casillas as being erroneous and was essentially discarded in the Presiding Official's written opinion.

The concern that Ahr could never again return to the State of Georgia and thus would be unable to receive further training at the Center in Glencoe, Georgia likewise cannot be considered. This accusation caused Ahr to attack the agency's decision on procedural grounds because he insists that it was not stated in Richard Norton's original discharge letter of June 29, 1982. The Court agrees. While that letter does recite the conditions placed upon Ahr, it does not state that the prohibition against returning to Georgia was a reason for the discharge. The MSPB essentially concedes as much, because in its opinion of September 21, 1984, the Board specifically notes that the travel prohibition was not used as

---

**2.** The Court acknowledges the evidence in the present record that Ahr has had difficulties with exhibitionism in earlier years, before his employment with INS. This fact formed no part of the agency's charges or decision, however, and will therefore not be considered here.

**3.** Ahr now intimates that the charges might never have been filed had the INS not contacted the state prosecutor and urged a prompt disposition of the charges. An affidavit from Ahr's Georgia attorney was offered on that point. This Court will not attempt to decide that question, as it is unnecessary to do so.

a basis for finding nexus but was used only to determine the appropriate sanction. Taking that opinion at face value, therefore, the alleged travel restriction cannot be considered even a scintilla of evidence to establish nexus. Parenthetically, this Court would question the weight of that restriction for any purpose. To the extent that the Georgia court purported to banish Ahr beyond the limits of the State of Georgia, the condition would appear to have been in direct violation of Article I, Section 1, Para. XXI, of the Georgia Constitution. Moreover, while the sentence does not specify the duration of the condition, it is doubtful that the condition could have been effective for longer than the twelve-month period of the sentence itself, which means it would have expired in May 1983. In any event, the alleged travel restriction has no bearing on nexus, as the agency itself concedes.

In summary, therefore, this is a case where Ahr was discharged solely and only on the basis of one misdemeanor conviction, for an incident occurring off duty. There has never been the slightest suggestion of any on-duty misconduct on his part, either before or after the conviction. There was never any publicity or notoriety about the conviction. His immediate supervisor believed that the conviction had no bearing whatever on his job performance, and his job performance has always been at least satisfactory and sometimes exemplary. Two specific concerns about the conviction, namely that it could be used for impeachment purposes and that it would prevent Ahr from receiving future training in the State of Georgia, have no merit and were both specifically abandoned by the agency as grounds for discharge. The only evidence establishing a nexus between this conviction and the efficiency of the service is the unsupported, generalized conclusion by several INS officials that Ahr can never again be trusted in the company of female aliens and that other federal agencies might possibly object to having their employees work with him. This Court is convinced that the agency's decision is not supported by substantial evidence and that the agency has made a clear error of judgment.

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED. Because of this ruling, the Court need not and will not consider Plaintiff's claim under the Rehabilitation Act. As Plaintiff has requested, the Court will not at this time attempt to determine the extent of the relief to which Plaintiff might be entitled. The parties are DIRECTED to confer in this regard and report to the Court on or before December 31, 1985 as to what agreement, if any, has been reached and what further proceedings, if any, are required.