UNITED STATES of America, Appellee,

v.

Margaret Jernigan WALL, Appellant.

No. 81–1305.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 4, 1981.

Decided Feb. 4, 1982.

Wright T. Dixon, Jr., Gary S. Parsons, Raleigh, N. C. (Bailey, Dixon, Wooten, McDonald & Fountain, Raleigh, N. C., on brief), for appellant.

Joe Knott, III, Raleigh, N. C. (James L. Blackburn, U. S. Atty., William Woodward Webb, Asst. U. S. Atty., Larry S. Height, Third Year Law Student, Raleigh, N. C., on brief), for appellee.

Before BUTZNER and SPROUSE, Circuit Judges, FIELD, Senior Circuit Judge.

SPROUSE, Circuit Judge:

The United States brought this action against Margaret Jernigan Wall pursuant to 42 U.S.C. § 2651, which authorizes recovery by the government of medical expenses incurred by it for the treatment of United States personnel injured by a third-party's tortious conduct and then treated at a government medical facility. The issue of Wall's liability was resolved in the government's favor at a jury trial below, and is not contested on appeal. Wall, however, contends that the district court erred in granting the government's motion for summary judgment as to the amount of damages. We agree and reverse.

On July 26, 1977, Wall was operating an automobile which collided with a motorcycle driven by Airman Joseph Allen at an intersection in Goldsboro, North Carolina. Allen was treated at military facilities in Goldsboro and at Fort Bragg, North Carolina. In September 1977 this suit was instituted under the Medical Care Recovery Act (MCRA), 42 U.S.C. §§ 2651–2653. While the respective liabilities of Wall and Allen were resolved at the jury trial, the government was granted summary judgment as to the amount of damages, $9,508.00, based on regulations promulgated by the Office of Management and Budget (OMB). The allowance of damages based solely on OMB's administrative determination is the crux of this appeal.

The United States is statutorily required to furnish medical care to a variety of civilian and military personnel. The MCRA was enacted in 1962 to allow the government to recover the reasonable cost of such medical care provided those persons tortiously injured by a third party. See S.Rep. No.1945, 87th Cong. 2d Sess., *reprinted in* [1962] U.S.Code Cong. & Ad.News 2637. In pertinent part it provides that:

> In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment . . . to a person who is injured or suffers a disease, . . . under circumstances creating a tort liability upon some third person (other than or in addition to the United States and except employers of seamen treated under the provisions of section 249 of this title) to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable

value of the care and treatment so furnished or to be furnished. . . .

42 U.S.C. § 2651(a).

> The President may prescribe regulations to carry out this chapter, including regulations with respect to the determination and establishment of the reasonable value of the hospital, medical, surgical, or dental care and treatment . . . furnished or to be furnished.

42 U.S.C. § 2652(a).

The authority to promulgate regulations "with respect to the determination and establishment" of reasonable values was delegated to the OMB and rates "determined to represent the reasonable cost" of federally-provided medical care were published in the Federal Register, 41 Fed.Reg. 26757 (1976). As applicable to this case, the rates were set at $168 per day for in-patient care and $20 per day for out-patient treatment, but the regulations are silent as to the method by which these rates were determined.[1]

Using the above figures, the government determined that it provided Allen with care having a reasonable cost of $9,508.00. By way of contrast, it was stipulated that equivalent care could have been obtained at private facilities in the Goldsboro area for $5,192.50. In this appeal, Wall contests the conclusive effect given this administrative determination, contending that (1) it was not Congress' intent to accord the challenged rates conclusive effect and (2) if the rates established by the OMB are conclusive, they constitute a constitutionally invalid "irrebuttable presumption."

■ Her first contention is without merit. The clear and unambiguous language of section 2652(a) vests in the President the authority to establish regulations with respect to the establishment of reasonable rates for care at a government facility. We perceive no legislative intent to require the government to litigate, in each and every case, the reasonableness of the administratively fixed rate as compared to prevailing rates at local civilian facilities.

---

1. The challenged regulation is reproduced in its    entirety in an appendix to this opinion.

■ Wall next contends that the fifth amendment's due process clause bars the conclusive application of the OMB rate, citing *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), and *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

*Stanley* invalidated provisions of Illinois law preventing unwed fathers from challenging the custody status of their offspring. In *LaFleur*, the Court found a mandatory maternity leave system to be "overly restrictive.... [constituting] a heavy burden" on the freedom of personal choice in matters of marriage and family life. *Vlandis* held that a college tuition system which turned on a statutory definition of "residency" was invalid, as it did not allow those seeking to meet its requirements to show factors relating to residency. We do not believe that these holdings control our disposition of this case. Contrary to the provisions in *Stanley* and *LaFleur*, the challenged regulation does not infringe on the exercise of rights having constitutionally-protected status. Unlike the state regulations examined in *Vlandis*, it does not isolate a single factor as being critical to distinguishing between classes of people, and then deny litigants the opportunity to show they are or are not members of a particular group. *See Weinberger v. Salfi*, 422 U.S. 749, 771–73, 95 S.Ct. 2457, 2469–70, 45 L.Ed.2d 522 (1975). It merely seeks to establish, pursuant to specific congressional authorization, the reasonable value of services rendered at government medical facilities. The establishment of a nationally-applicable rate does not "involve affirmative Government action which seriously curtails important liberties cognizable under the Constitution," *id.* at 785, 95 S.Ct. at 2476, and there is "[t]hus no basis for ... requiring individualized determinations when Congress can rationally conclude not only that generalized rules are appropriate to its purposes and concerns, but also that the difficulties of individual determinations outweigh the marginal increments in the precise effectuation of congressional concern which they might be expected to produce." *Id.* We believe that the challenged regulation is analogous to the social welfare legislation examined in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), where the Court stated that such legislative judgments would be sustained if they were rationally based and free from invidious discrimination, even though not made with mathematical precision, since the problems involved in making determinations having nationwide application justify a certain degree of flexibility. *Id.* Even though this standard was articulated in the context of the fourteenth amendment, it applies with equal force to claims arising under the fifth amendment. *Richardson v. Belcher*, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

Although the fixing of uniform rates covering the cost of medical care at government hospitals is constitutionally valid, the regulations adopted must also be consistent with the statute under which they are promulgated, *United States v. Larinoff*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977), within the scope of authority of the promulgating officer, and not made in an arbitrary or capricious manner. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Our standard of review in a case such as this is narrow, but we must consider whether the decision of the OMB was "based on the consideration of relevant factors and whether there had been a clear error of judgment." *Id.*

In the instant case, the regulations promulgated by the OMB contain no more than an ultimate conclusion, *i.e.*, the dollar amounts to be charged for each day of care at a government hospital. This fixing of rates with no indication of the factors which led to their determination effectively prevents our review of the regulatory process. We are not prepared to say that the rates so fixed are unreasonable, or that the OMB acted improperly in reaching their determination, but only that by not articulating the basis for the fixing of these particular rates, the OMB has impaired the

ability of the reviewing court to assess the validity of the rate-making process, thereby acting beyond its authority. The district court, therefore, erroneously accorded controlling weight to these regulations in ruling on the appellants' summary judgment motion, and its judgment is reversed.

The OMB could, of course, effectively issue regulations setting rates to be applied under the MCRA. Unless and until that is accomplished, however, the government is required to establish at trial the reasonableness of damages for medical care in the same manner as any other plaintiff in a personal injury suit, without the benefit of a presumptively reasonable rate set by regulation.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

APPENDIX

OFFICE OF MANAGEMENT
AND BUDGET

COST OF HOSPITAL AND MEDICAL CARE AND TREATMENT FURNISHED BY THE UNITED STATES

Certain Rates Regarding Recovery From Tortiously Liable Third Persons

By virtue of the authority vested in the President by Section 2(a) of the Act of September 25, 1962 (76 Stat. 593; 42 U.S.C. 2652), and delegated to the Director of the Office of Management and Budget by Executive Order No. 11541 of July 1, 1970 (35 FR 10737), the following three sets of rates are established for use in connection with the recovery, as authorized by such Act, from tortiously liable third persons of the cost of hospital and medical care and treatment furnished by the United States (Part 43 of Chapter I of Title 28 of the Code of Federal Regulations) through three separate Federal agencies. These rates have been determined to represent the reasonable cost of hospital, nursing home, medical, surgical or dental care and treatment (including prostheses and medical appliances) furnished or to be furnished:

(a) For such care and treatment furnished by the United States in Federal hospitals and nursing homes, administered by any of the three Federal agencies—Department of Defense, Veterans Administration, or Department of Health, Education, and Welfare—with the exception of Canal Zone Government Hospitals—

| | DOD | VA | HEW |
|---|---|---|---|
| Hospital care per inpatient day; Federal, general, medical, surgical, and tuberculosis care | $168 | $116 | $117 |
| Federal psychiatric care | | 68 | |
| Veterans' Administration nursing home care | | 53 | |
| Outpatient, medical and dental treatment: Per outpatient visit | 20 | 39 | 25 |

(b) For such care and treatment furnished at Government expense in a facility not operated by the United States, the rates shall be the amounts expended by the United States for such care and treatment.

(c) For such care and treatment at Canal Zone Government hospitals, the rates shall be those established, and in effect at the time the care and treatment is furnished, by the Canal Zone Government for such care and treatment furnished to beneficiaries of other United States Government agencies.

For the period beginning July 1, 1976, the rates prescribed herein supersede those established by the Director of the Office of Management and Budget on May 14, 1975 (40 FR 24254).

Paul H. O'Neill,
Acting Director,
Office of Management and Budget

JUNE 17, 1976.