Michael L. SWANN, Plaintiff,

v.

Harry N. WALTERS, et al., Defendants.

Civ. A. No. 83–3493.

United States District Court,
District of Columbia.

July 27, 1984.

Francis R. Ridley, Jr., Washington, D.C., for plaintiff.

Stuart H. Newberger, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

In this action, plaintiff seeks reversal of his demotion by the Veterans Administration (VA).

Plaintiff was first employed by the VA in 1972 as a computer operator in one of its Medical Centers (VAMC), and was promoted to the job of Shift Supervisor in 1976. In this position, plaintiff had access to computerized medical records of VAMC patients. Specifically, he was responsible for the operation and monitoring of the central processing unit and all patient ward terminals; this gave him the ability to enter or change data in the computer system. Hence, plaintiff had access to confidential medical information—information often critical to a patient's well-being. For these reasons, and in accordance with an Office of Management and Budget (OMB) directive issued in 1978, plaintiff's position was designated as a "critical-sensitive ADP–I" * for which a security clearance is required. Following the appropriate investigation, clearance was issued in 1980.

In May, 1982, plaintiff was convicted on a felony charge of sexual child abuse in a Maryland state court. He received a five-year suspended sentence and was placed on probation for five years with a requirement to undergo psychiatric treatment. Plaintiff did not report his conviction to the VA. When the Director of the VAMC learned of the conviction, in January 1983, he referred the matter to the Office of the Inspector General for review of plaintiff's security clearance. That office, in applying Federal Personnel Manual guidelines, determined that plaintiff was no longer able to hold a critical-sensitive ADP–I position. In particular, it was felt that plaintiff's crime reflected too adversely upon his honesty, integrity, and character to permit him to hold a position which requires a high degree of trustworthiness and stability.

Accordingly, in March, 1983, plaintiff's security clearance was revoked, and, following a hearing, he was advised that he would be removed from his position. After negotiations with plaintiff's attorney, the VA agreed to offer plaintiff a position which did not require a security clearance. At the time, the only such job available was that of Housekeeping Aide. Consequently, in May, 1983, plaintiff was demoted from Shift Supervisor for the Computer System to Housekeeping Aide.

■ Plaintiff appealed his demotion to the Merit Systems Protection Board (MSPB), which affirmed the VA's action. The MSPB found that plaintiff's criminal misconduct was sufficiently serious and indicative of aberrant behavior to justify the VA's concern about his character and trustworthiness. Besides challenging the propriety of demotion following his conviction, plaintiff claimed the VA's action constituted discrimination on the basis of his handicap of paranoid schizophrenia. The MSPB found no evidence of such discrimination.[1]

Now before the Court are the parties' cross motions for summary judgment.[2] At issue are plaintiff's claims that (1) his position did not require a security clearance and, even if it did, the clearance was im-

---

* Automatic Data Processing-I.

1. Plaintiff also claimed that, since blacks are more likely to be convicted of crimes than whites, demotion on the basis of a criminal conviction represents racial discrimination. It is true that employment requirements which operate to exclude blacks disproportionately and which are unrelated to job performance are prohibited. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). How-ever, as explained in this opinion, plaintiff's criminal misconduct was directly related to his job performance.

2. Technically, plaintiff filed a motion for judgment on the pleadings. Since he relies, in his motion, upon matters outside the pleadings (*e.g.*, affidavits) contrary to Fed.R.Civ.P. 12(c), this Court has treated the motion as one for summary judgment.

properly revoked, in violation of the Civil Service Reform Act of 1978, 5 U.S.C. § 1101 *et seq.*, and (2) his demotion represented discrimination on the basis of his psychiatric handicap in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*

■■■ While appeals of MSPB decisions are generally heard in the Court of Appeals for the Federal Circuit, 5 U.S.C. § 7703(b)(1) (1982), those which combine claims of discrimination and claims on other bases, are heard in the federal district court. *See Hayes v. U.S. Gov't Printing Office*, 684 F.2d 137, 140 (D.C.Cir.1982); 5 U.S.C. § 7703(b)(2). The district court reviews the discrimination claims *de novo* and the other claims on the administrative record. *Id.* at 141; *Mayo v. Edwards*, 562 F.Supp. 907 (D.D.C.1983) (federal employee challenged dismissal on procedural grounds and discrimination grounds, and procedural claim reviewed on the administrative record). As to the latter, the Court may set aside only those agency actions which are arbitrary, capricious, an abuse of discretion, not in accordance with law or procedure, or unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Hayes*, 684 F.2d at 138.

## I. *Plaintiff's Security Clearance*

Plaintiff challenges the application of security clearance considerations on grounds that (a) his position did not require a security clearance and (b) his clearance was improperly revoked. The Court rejects both claims.

Plaintiff first argues that, since his position had no relation to matters of national security, a security clearance should not have been required. However, the guidelines for computer security do not depend upon national security considerations. Rather, they were promulgated under Transmittal Memorandum No. 1 to OMB

Circular A–71 (1978) which requires federal agencies to develop and implement computer security programs.[3]

OMB Circular A–71 itself was issued under the authority of 5 C.F.R. § 1310.1 (1984) (OMB and Federal Management Circulars) which provides:

> In carrying out its responsibilities, the Office of Management and Budget issues policy guidelines to Federal agencies to promote efficiency and uniformity in Government action. These guidelines are normally in the form of circulars.

The responsibility for computer security was delegated to OMB through the Reorganization Plan No. 2 of 1970, 3 C.F.R. 1070 (1966–1970 Comp.) *reprinted in* 31 U.S.C. § 501 note (1982) ("Improvement of ... information ... systems will be a major function of the Office of Management and Budget") and Executive Order 11,541, 3 C.F.R. 939 (1966–1970 Comp.) *reprinted in* 31 U.S.C. § 501 note (1982) (Executive authority to carry out the Reorganization Plan No. 2 of 1970 assigned to OMB). Finally, the authority for the Reorganization Plan is 5 U.S.C. § 903 (1982):

> "Whenever the President, after investigation, finds that changes in the organization of agencies are necessary ..., he shall prepare a reorganization plan...."

5 U.S.C. § 903(a).

■■■ OMB's computer security regulations are valid provided they are not arbitrary or capricious within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1982), *See, e.g., United States v. Wall*, 670 F.2d 469, 471 (4th Cir.1982). The standard of review is a narrow one: the Court's role is to ensure that OMB's regulations are based on a consideration of relevant factors and that no clear error of judgment has been made. *United States v. Wall*, 670 F.2d at 471; *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136

---

**3.** Since the medical records of patients are protected by the Privacy Act, 5 U.S.C. § 552(e)(10) (1982), these computer security guidelines could also have been promulgated under 38 C.F.R. § 1.578(j) (1983) (" The Veterans Administration will establish appropriate ... safeguards to insure the security and confidentiality of records ..."). Section 1.578(j) was issued under, and with the same language, as the Privacy Act.

(1971). The Court is not free to substitute its judgment for OMB's; rather, OMB's regulations must be upheld if supported by a rational basis. *See Loyola University v. FCC,* 670 F.2d 1222, 1226 (D.C.Cir.1982); *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C. Cir.) (en banc) *cert. denied,* 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976).

■ Applying these guidelines, the Court upholds OMB's computer security program. The need to control access to computer data is obvious. Large amounts of important and sensitive information are concentrated on government computer disks. A computer operator can cause substantial harm by destruction, alteration, or disclosure of the data.

■ The Court also affirms the security classification of plaintiff's position, Shift Supervisor for the Computer System, as critical-sensitive ADP–I.[4] Critical-Sensitive refers to positions

> in which the incumbent ... can access a system during the operation or maintenance in such a way, and with relatively high risk for causing grave damage or realize a significant personal gain.

> Federal Personnel Manual, Chapter 732, subchapter 1–9(c)(1) (May 16, 1979) (revised January 6, 1984; quoted provision remains in effect).

> Such portions may involve:

> ...—Significant involvement in life-critical or mission-critical systems. —Positions involving major responsibility for the ... operation, monitoring, and/or management of systems hardware and software.

> Federal Personnel Manual, Chapter 732, Appendix A–2 (May 16, 1979) (revised January 6, 1984; quoted provision remains in effect).

Plaintiff's position fits well within these criteria. Since a Shift Supervisor has access to highly sensitive medical records of patients, with the ability to alter those records, the position involves a "relatively high risk for effecting grave damage to the system." Moreover, access to medical records, particularly where, as here, the records belong to active patients, represents a "significant involvement in [a] life critical ... system." Finally, a Shift Supervisor has "major responsibility" for the "operation" and "monitoring" of the patient records system.

■ In addition to properly classifying plaintiff's position for security purposes, the VA acted reasonably in revoking his security clearance. Under 5 U.S.C. § 7513(a) (1982), an agency may take adverse action against an employee "only for such cause as will promote the efficiency of the service." Among the reasons which may be considered as a basis for such adverse action are *"criminal,* dishonest, infamous or notoriously disgraceful conduct." (Emphasis added.) Federal Personnel Manual, Supplement 731–1, subchapter S2–3 (November, 1975).

■ In acting under Section 7513, an agency must find that (1) the employee actually committed misconduct and (2) a nexus exists between the misconduct and the efficiency of the service. *Hoska v. U.S. Dep't of the Army,* 677 F.2d 131, 136–37 (D.C.Cir.1982); *McClelland v. Andrus,* 606 F.2d 1278, 1291 (D.C.Cir.1979). Without evidence of a nexus, "the adverse action must be condemned as arbitrary and capricious for want of a discernible rational basis." *Doe v. Hampton,* 566 F.2d 265, 272 (D.C.Cir.1977); *Hoska v. U.S. Dep't of the Army,* 677 F.2d at 137; *McClelland v. Andrus,* 606 F.2d at 1291. That plaintiff committed criminal misconduct is not disputed here. Rather plaintiff claims there was an inadequate demonstration of a nexus by defendant.

■ While in general an agency must explicitly demonstrate a nexus, *Norton v. Macy,* 417 F.2d 1161, 1164–65 (D.C.Cir. 1969); *Yacovone v. Bailar,* 455 F.Supp. 287, 290 (D.D.C.1978), there are circum-

---

**4.** The classification terminology has been modified since the parties' briefs were filed. Hence, ADP–I has become Level 3. With this change, there has been no alteration in the definition of "critical-sensitive."

stances in which the seriousness of the misconduct and the nature of the employee's duties justify a presumption that a nexus exists. In such cases, the agency need not make a particular showing that the efficiency of the service is impaired. *Gloster v. General Services Admin.,* 720 F.2d 700, 703 (D.C.Cir.1983); *Yacovone v. Bolger,* 645 F.2d 1028, 1032 (D.C.Cir.), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981); *Gueory v. Hampton,* 510 F.2d 1222, 1226 (D.C.Cir.1974) (maintenance worker at Post Office fired following conviction for manslaughter). As the court in *Moffer v. Watt,* 690 F.2d 1037, 1040 n. 12 (D.C.Cir.1982), pointed out, there are cases where the connection between the misconduct and employment responsibilities "speaks for itself." This is one of those cases. It cannot be said to be unreasonable for defendant to conclude that plaintiff's conviction of sexual child abuse casts grave doubt on his reliability, trustworthiness, and ethical conduct. *See Gueory v. Hampton,* 510 F.2d at 1226. Moreover, the requirement that plaintiff have a security clearance follows directly from the importance of trustworthiness and reliability to his position.

This case, because it involves an employee who was convicted of serious criminal misconduct *and* was employed in a position requiring security clearance, is readily distinguishable from those cases where a nexus could not be presumed. *See e.g., Bonet v. U.S. Postal Service,* 661 F.2d 1071 (5th Cir.1981) (postal worker in non-sensitive position); *Hoska v. U.S. Dep't of the Army,* 677 F.2d 131 (security clearance revoked on the basis of unsubstantiated evidence of minor acts of indiscretion); *D.E. v. Dep't of the Navy, MSPB,* 721 F.2d 1165 (9th Cir. 1983) (civilian employee of Navy convicted of sexual child abuse with security not an issue).

 Plaintiff's claim that he was denied due process must also fail. Under 5 U.S.C. § 7513 an employee against whom dismissal is proposed is entitled to (1) 30 days

advance written notice stating the specific reasons for the dismissal; (2) a reasonable time to respond (not less than 7 days); (3) representation by an attorney; and (4) appeal before the MSPB. Moreover, an agency may provide for a hearing. These procedural safeguards have been found by the Supreme Court to satisfy the requirements of due process. *See Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Furthermore, they were correctly observed by the VAMC. Plaintiff was (a) provided with 30 days advance written notice of the proposed dismissal on April 8, 1983, (b) told that the action was based on his conviction, (c) allowed two weeks to respond, and (d) granted a conference with officers of the VAMC to which he was accompanied by his attorney. During the conference, on April 29, 1983, an agreement was reached whereby plaintiff would be retained in a non-sensitive position.[5] Three weeks later plaintiff made his appeal to the MSPB; on September 16, 1983, his demotion was affirmed.

## II. *Handicap Discrimination*

Plaintiff's second major claim, that his demotion constituted handicap discrimination, in violation of the Rehabilitation Act of 1973, Sections 501, 504, as amended, 29 U.S.C. §§ 791, 794 (1982), is equally untenable. The handicap alleged is mental disability from a chronic condition of paranoid schizophrenia, for which plaintiff has received psychiatric treatment since the 1960's.

29 U.S.C. § 794 provides that

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be ... subjected to discrimination under any program or activity ... conducted by an Executive agency....

 The protection of Section 794, since it extends only to those handicapped employees "otherwise qualified" for their po-

---

5. At that time, the only position which was both available and suitable was Housekeeping Aide.

Plaintiff was offered that position on May 5, 1983.

sitions, cannot be invoked by plaintiff. To be "otherwise qualified," he must be able to meet all of his job's requirements "in spite of" his handicap. *See Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979); *Walker v. Attorney General of the U.S.,* 572 F.Supp. 100, 102 (D.D.C.1983); *Treadwell v. Alexander,* 707 F.2d 473, 477 (11th Cir.1983). However, as discussed above, plaintiff's criminal misconduct made him unsuitable to hold a security clearance, a fundamental requirement of his position. Moreover, the appraisals by *plaintiff's* own psychiatric witnesses indicate that the schizophrenia undermines his stability to an extent that he is not suitable for a security clearance. According to the affidavit of Dr. Lawrence Y. Kline, exacerbations of plaintiff's illness "render him a definite threat to others." Dr. Ronald D. Wynne also found that stress makes plaintiff dangerous to others.

■ Plaintiff cannot sustain his Section 794 claim for the further reason that he was not demoted "solely because of his handicap." Rather, the VA acted because plaintiff's criminal misconduct reflected adversely on his trustworthiness and stability. There is no evidence that his psychiatric condition was taken into account. *See Guerriero v. Schultz,* 557 F.Supp. 511, 513 (D.D.C.1983) (foreign service officer with schizoid personality disorder dismissed after engaging in sexual acts in a public bar). Indeed, plaintiff did not disclose the existence of his schizophrenia until his appeal to the MSPB.

■ The other potential basis for plaintiff's discrimination claim, 29 U.S.C. § 791, fails as well. Section 791 requires federal agencies to go beyond the nondiscrimination of Section 794 and take affirmative steps in its hiring, placement, and advancement of handicapped individuals. *See Southeastern Community College v. Davis,* 442 U.S. at 410–11, 99 S.Ct. at 2369; *Prewitt v. U.S. Postal Service,* 662 F.2d 292, 306 (5th Cir.1981). Regulations to implement Section 791 have been promul-

gated by the Equal Employment Opportunity Commission and require that

An agency shall make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

29 C.F.R. § 1613.704(a) (1984).

■ The purpose of Section 791 is to ensure that handicapped individuals are not excluded from jobs whose essential requirements they can meet. *See* 29 C.F.R. § 1613.702(f); *Prewitt v. U.S. Postal Service,* 662 F.2d at 307. Plaintiff, however, asks the Court to use his schizophrenia as a basis for *exempting* him from a critical criterion of his job, the security clearance. Since plaintiff's claim is outside the protection of the Rehabilitation Act, it is rejected. An appropriate Order accompanies this Memorandum Opinion.

### ORDER AND FINAL JUDGMENT

In accordance with the Memorandum Opinion issued this date, it is, by the Court, this 27th day of July, 1984

ORDERED that plaintiff's motion for judgment on the pleadings be and it hereby is denied; and it is further

ORDERED that defendants' motion for summary judgment be and it hereby is granted; and it is further

ORDERED that judgment be and it hereby is entered in favor of defendants, Harry N. Walters, Administrator, Veterans Administration, Frank S. Sato and A.A. Gavazzi, and against plaintiff, Michael L. Swann.