**Mike A. NISPEROS, Jr., Plaintiff,**

v.

**James L. BUCK,[1] in his capacity as Acting Commissioner of the Immigration and Naturalization Service, Defendant.**

**No. C–88–4039–WWS.**

United States District Court,
N.D. California.

Sept. 12, 1989.

---

1. James L. Buck, Acting Commissioner of the Immigration and Naturalization Service, was substituted for Alan C. Nelson as the defendant in this case, pursuant to Fed.R.Civ.P. 25(d)(1).

John L. Burris, Elizabeth Heller Eto, Law Offices of John L. Burris, Oakland, Cal., for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Joseph P. Russoniello, U.S. Atty., Stephen L. Schirle, Asst. U.S. Atty., Anne M. Gulyassy, Asst. Director, W. Scott Simpson, Trial Atty., Dept. of Justice, Federal Programs Branch, Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

Plaintiff Mike A. Nisperos, Jr. ("Nisperos") brings this action against James L. Buck, Acting Commissioner of the Immigration and Naturalization Service ("INS"), alleging that his employment as a general attorney with the INS was terminated in violation of section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 ("the Act") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Nisperos has voluntarily dismissed his Title VII claim. (Pltf.'s Reply to Def.'s Opp. to O.S.C. ["Pltf.'s Rep."] at 3.)

On May 12, 1989 the Court denied defendant's motion for partial summary judgment and entered an Order to Show Cause why summary judgment on the issue of liability on the Rehabilitation Act claim should not be granted to plaintiff.

No material issues of fact remain in dispute as to liability and this case is therefore appropriate for decision by summary judgment.[2]

### I. *Factual Background*

The following facts are not in dispute. Nisperos was hired on January 19, 1987 to serve as a general attorney in the San Francisco office of the District Counsel of the INS. (Nisperos July 31 dec. ¶ 2.) During his employment with the INS, Nisperos suffered from a drug problem. (Nisperos Feb. 17 dec. ¶ 4.) He received one formal performance evaluation which covered the period January 20 through June 30, 1987. He received an overall rating of "Fully Successful." (Le Fevre June 22 dec. ¶ 8.) Nisperos received "Fully Successful" ratings in the categories of "Knowledge," "Writing Skills," "Research Skills," "Litigation Support and Legal Assistance," and "Timeliness." He received "Excellent" ratings in "Advocacy Skills" and "Ability to Deal Effectively with Others," and received a "Minimally Satisfactory" rating in the category of "Productivity, Problem Solving Ability, Motivation" based on a below-average quantity of written work. (Pltf.'s Rep. Ex. B.)

In August 1987, Nisperos had a meeting with his supervisor, Ronald Le Fevre, and told him that he wished to enter a detoxification program to get treatment for substance abuse. Le Fevre expressed concern that participation in such a program might conflict with Nisperos' planned attendance at training sessions for "employer sanctions" work for which Nisperos was being considered. (Nisperos Feb. 17 dec. ¶ 3; Le Fevre June dec. ¶¶ 2–6.) Nisperos did not enter a rehabilitation program at that time. (Nisperos Feb. dec. ¶ 3.) This meeting was the first time Le Fevre suspected that Nisperos had an alcohol or drug problem. (Le Fevre Jan. dec. ¶ 4.) On September 25, Le Fevre suspected that Nisperos had a serious drug problem after Nisperos informed Le Fevre that the previous night, at home, he had fired a shot at an intruder, of

---

**2.** Defendant has asked that ruling be deferred until counsel has had an opportunity to interview persons employed in the law office where Nisperos is currently employed. There has been no showing how any information from them could have a material bearing on the issues before the Court on this motion, and hence there is no reason to defer this ruling.

whom no sign was found by police. (Le Fevre Jan. dec. ¶ 5.)

By late September 1987, Nisperos realized that he needed to seek rehabilitative treatment immediately, and on September 26 applied for admission to the Martinez V.A. hospital. (Nisperos Feb. dec. ¶ 8.) He was told that there would be a two-week wait before he could be evaluated for admission. (*Id.*) On September 27, 1987 Nisperos was arrested at his home for being under the influence of cocaine and for possession of narcotic paraphernalia. (*Id.;* First Amend. Cmplt ¶ 9.)

On September 30, Nisperos entered an in-patient rehabilitation program at Gladman Memorial Hospital, which he successfully completed on October 28. (Nisperos Feb. dec. ¶ 8.) Nisperos states that he has remained sober and drug-free since that time (*Id.*), and there have been no facts brought forward to dispute this. In May 1988, the criminal charges against him were dismissed following his successful completion of a diversion program during which he had been regularly tested for drugs. (*Id.* ¶ 9; Nisperos Feb. dec. Ex. B.)

While an in-patient at Gladman hospital, Nisperos applied for sick leave.. He did not receive sick leave, but was granted leave without pay. (*Id.* ¶ 8.) Sometime after his admission to Gladman, Nisperos telephoned Le Fevre and informed him of his arrest. (First Amend. Cmplt ¶ 9; Ans. ¶ 9.) On October 30, 1987, Nisperos was given a letter notifying him that he was being terminated by the INS. (Nisperos Feb. dec. ¶ 8.) Neither that letter nor a November 20 follow-up letter gave a reason for the termination. (Nisperos Feb. dec. Ex. A.) During the course of this litigation, the INS has stated that the reason for Nisperos' termination was his cocaine use and arrest. (Le Fevre Jan. dec. ¶ 10; Odencrantz dec. ¶ 6; Momboisse dec. ¶ 6.)

## II. *Discussion*

### A. Order to Show Cause

Defendant contends that the Court should not consider granting summary judgment for plaintiff unless and until plaintiff has moved for summary judgment. He concedes that the Court has the authority to proceed *sua sponte* via an Order to Show Cause, *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Golden State Transit Corp. v. City of Los Angeles,* 726 F.2d 1430, 1431 n. 1 (9th Cir.1984), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985), but "questions the wisdom of exercising the rule in this case." (Def.'s Opp. at 2–3 n. 2.)

So long as the INS had adequate notice of the issues to be addressed and "had a full and fair opportunity to ventilate the issues involved in the motion," it has not been prejudiced. *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 312 (9th Cir.1982). Here, there have been three rounds of briefing on summary judgment motions, and the Court has given clear instructions to the INS concerning the issues to be addressed. Further, the INS has been given ample time to submit a reply brief. Thus it is proper for the Court to consider granting summary judgment on liability for Nisperos.

### B. The Rehabilitation Act

■ As a federal employee, Nisperos' claim of discrimination based on a handicap arises exclusively under section 501 of the Rehabilitation Act, 29 U.S.C. § 791. *Johnston v. Horne,* 875 F.2d 1415, 1420–21 (9th Cir.1989); *Boyd v. United States Postal Service,* 752 F.2d 410, 413 (9th Cir.1985).[3]

Section 791 is implemented by regulations codified at 29 C.F.R. §§ 1613.701— 1613.709. The regulations provide that "[t]he Federal Government shall become a model employer of handicapped individuals. An agency shall not discriminate against a qualified physically or mentally handicapped person." 29 C.F.R. § 1613.703. The regulations define a "qualified handicapped person" as one who, "with or without reasonable accommodation, can perform the essential functions of the position

---

**3.** Defendant makes no contention that Nisperos did not exhaust administrative remedies as required by section 791.

in question without endangering the health and safety of the individual or others...." 29 C.F.R. § 1613.702(f).

■ To prevail, plaintiff must show (1) that he is a handicapped person; (2) that he was "otherwise qualified" for the position of general attorney, and (3) that he was terminated because of his handicap. *Thornhill v. Marsh*, 866 F.2d 1182, 1183 (9th Cir.1989); *Reynolds v. Brock*, 815 F.2d 571, 574 (9th Cir.1987).[4]

### 1. Handicapping Condition

A rehabilitated drug or alcohol abuser is a protected handicapped person under the Act. 29 U.S.C. § 706(8)(B), which defines "handicapped individual,"[5] excludes

> any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol and drug abuse, would constitute a direct threat to property or the safety of others.

The legislative history of the Act supports the contention that only current drug or alcohol abusers are excluded from the Act's protection. *See* H.R.Rep. No. 95–1149, 95th Cong., 2d Sess. 23, *reprinted in* 1978 U.S.Code Cong. & Admin.News 7312, 7334 ("The committee emphasizes that an individual with a record of alcohol or drug abuse ... may still be protected by the provisions of sections 503 and 504 [barring employment discrimination] if he or she is not in need of rehabilitation. This protects otherwise qualified self-reformed or rehabilitated alcoholics or drug abusers from unreasonable discrimination."). *See also* *School Board of Nassau County v. Arline*, 480 U.S. 273, 285 n. 14, 107 S.Ct. 1123, 1130 n. 14, 94 L.Ed.2d 307 (1987) (§ 706(8)(B) demonstrates that Congress did not intend to categorically exclude all drug addicts from protection under the Act); *Burka v. New York City Transit Authority*, 680 F.Supp. 590, 600 (S.D.N.Y. 1988) (court analyzes legislative history to conclude that "sections 503 and 504 extend protection ... to rehabilitated or rehabilitating drug abusers"); *Simpson v. Reynolds Metals, Co.*, 629 F.2d 1226, 1231 n. 8 (7th Cir.1980); *National Treasury Employees Union v. Reagan*, 685 F.Supp. 1346, 1353 (E.D.La.1988).

■ There is no dispute that Nisperos was "rehabilitated or rehabilitating" at the time the INS terminated him. (Le Fevre Jan. dec. ¶ 11.) While defendant does not concede that Nisperos was a drug abuser, (Def.'s Rebuttal at 7 n. 10.) he does not come forward with facts raising a triable issue. The record adequately demonstrates that Nisperos was "regarded as having ... an impairment" by the INS[6], and he thus has met his burden of establishing that he is a handicapped individual within the Act.

### 2. Otherwise Qualified

Under section 791, INS was prohibited from terminating Nisperos if he was "qualified to perform the essential requirements of his job without a reasonable probability of substantial injury to the [employee] or others[.]" *Mantolete*, 767 F.2d at 1423. *See also Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct.

---

4. Although *Thornhill* and *Reynolds* were decided under 29 U.S.C. § 794 (banning discrimination based on handicap in programs receiving federal funds), the elements under section 791 are similar, except for its requirement that reasonable accommodation of the handicap be considered in determining whether the handicapped person is otherwise qualified. *See Mantolete v. Bolger*, 767 F.2d 1416, 1421 (9th Cir. 1985). The defendant bears the burden of proving that the plaintiff's handicap could not be accommodated. *Id.* This Court will look to decisions under § 794 in construing § 791.

5. 29 U.S.C. § 706(8)(B) defines "handicapped individual" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

6. INS terminated Nisperos because of its belief that his admitted cocaine use and arrest made him unfit for his position as a general attorney. Le Fevre Jan. dec. ¶ 10; Odenkrantz dec. ¶¶ 4, 6; Momboisse dec. ¶¶ 4, 6. Further, Le Fevre states that he suspected, in late September, that Nisperos had a serious drug problem. (Le Fevre Jan. dec. ¶ 5.)

2361, 2367, 60 L.Ed.2d 980 (1979) (under § 704 "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap").

Nisperos' favorable performance evaluation demonstrates that he was qualified to perform the activities which his position as general attorney demanded. Further, his job performance was such that his supervisor did not suspect that Nisperos was suffering from drug addiction until Nisperos revealed his desire to enter a detoxification program. (Le Fevre Jan. dec. ¶ 4.) Defendant's attempts to highlight Nisperos' inadequate production of written work does not create a genuine issue of fact in light of the balance of Nisperos' evaluation, and in light of the fact that the INS retained Nisperos and even considered him for additional responsibilities as an "Employer Sanctions" attorney.

Defendant contends that the essential requirements for the position of INS general attorney include "trustworthiness, objectivity, and good judgment." (Def. Brief in Opp. at 11.) Doubtless these are essential requirements, but defendant has offered no evidence which would refute plaintiff's evidence, in the form of his formal evaluation, that he possessed and satisfactorily demonstrated these characteristics while carrying out his professional responsibilities with the INS.[7] As Nisperos was able, despite his drug addiction, to faithfully discharge his duties, there is no basis to conclude that he would not be able to do so after he successfully completed the rehabilitation program.

Defendant's main contention, and the crucial issue before the Court, is that Nisperos' use of illegal drugs and his related arrest alone disqualify him from employment as an INS general attorney; in other words, that freedom from *past* drug use and related arrest is an essential qualification for the job. In undertaking this analysis, it must be kept in mind that "[t]he importance of preserving job opportunities for the handicapped sets a high standard for the effectiveness of job qualifications that adversely affect the handicapped." *Bentivegna v. United States Dept. of Labor*, 694 F.2d 619, 621 (9th Cir.1982). The burden is on the defendant to demonstrate that its asserted essential qualification is truly essential and is not merely a "remote concern[.]" *Id.* at 622, 623; *see also Simon v. St. Louis County*, 656 F.2d 316, 321 (8th Cir.1981), *cert. denied* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982) (unmet qualifications barring handicapped individual from employment must be reasonable, legitimate and necessary requirements).

Defendant contends that an admitted drug user criminally involved with drugs cannot be qualified to be an INS general attorney because a general attorney's duties include representing the INS in deportation proceedings, and some deportation proceedings are based on the alien's use of illegal drugs. In addition, a general attorney may be called on to render advice and assistance regarding drug laws to INS border patrol agents and other INS personnel who have responsibility for detaining aliens arrested on drug charges. (Def.'s Apr. 17 First Suppl. Brief at 6–7.) Defendant contends that "[h]aving such a person in the position of general attorney would

---

7. Nisperos' formal evaluation states that his "[c]ases are always well-prepared for hearings" and that he "[m]eets assignment deadlines to the best of ability under heavy case load.... Timely preparation." (Pltf.'s Rep. Ex. B at 14.) Another section of the evaluation concludes that

Mr. Nisperos is developing a very close relationship and a strong rapport with operating personnel. Several Service officers and Special Agents have praised Mr. Nisperos for his cooperative attitude and vigorous presentation of the Service's case during hearings. Members of the private bar have commented favorably on his professional attitude, courtesy and ability to engage in productive dia-

logue to resolve litigating issues whenever possible.

*Id.* at 10.

Defendant refers to certain incidents a few days before Nisperos entered the rehabilitation program in which, defendant asserts, Nisperos experienced hallucinations and fired a gun at an imaginary intruder. (Def. Brief in Opp. at 6.) As the INS itself points out, however, hallucinations, violent behavior and paranoid delusions are direct manifestations of Nisperos' handicap of cocaine addiction. (Def.'s Rebuttal at 7.) In any case, plaintiff was not discharged for these reasons. (*Id.*)

undermine the integrity of the INS's position on the deportation of aliens who are drug addicts, drug users, and drug offenders and would undermine public confidence in the INS." (Def.'s Feb. 24 Reply Brief at 9.) The INS asserts, moreover, that Nisperos' drug use and related arrest disqualify him not only from any drug-related duties, but from *all* duties as a Department of Justice attorney. *"All* of [Nisperos'] duties demanded the highest degree of trust and the highest ethical standards ... the absence of which were established by his drug use and arrest." (Def.'s Rebuttal at 9 n. 11.) (emphasis in original) "Plaintiff was an attorney within the department principally charged with prosecuting violations of the criminal laws of the country, ... in an agency specifically charged with stemming the flood of illegal importation of drugs and people." (Def.'s Opp. Brief at 10–11.)

While in the best of all worlds attorneys should not be involved with drugs, defendant must do more than recite broad generalizations to demonstrate that a drug-free history is an "essential" element of a general attorney's job. Defendant points to Executive Order No. 12,564, 3 C.F.R. 224 (1987), *reprinted in* 5 U.S.C.A. § 7301 note at 37–39 (West Supp.1988), "Drug–Free Federal Workplace," which states that "[p]ersons who use illegal drugs are not suitable for Federal employment," *id.* § 1(c), and that "[a]gencies shall initiate action to discipline any employee who is found to use illegal drugs ..." *Id.* § 5(b).

The Executive Order, however, does not establish that freedom from past drug use, even drug use while a government employee, is an "essential requirement" of federal employment. This is because the Order makes an exception to the requirement that a drug-using employee be disciplined where the employee "(1) [v]oluntarily identifies himself as a user of illegal drugs ... prior to being identified through other means; (2) [o]btains counseling or rehabilitation through an Employee Assistance Program;

and (3) [t]hereafter refrains from using illegal drugs." *Id.* § 5(b). Further, the Order specifically gives supervisors discretion to retain past drug users in sensitive positions:[8]

as part of a rehabilitation or counseling program, the head of an Executive agency may, in his or her discretion, allow an employee to return to duty in a sensitive position if it is determined that this action would not pose a danger to public health or safety or the national security.

*Id.* § 5(c).

It is not necessary to decide whether Nisperos "voluntarily" identified himself before "being identified by other means,"[9] to conclude that these provisions demonstrate that it is not an essential qualification of government service, even in "sensitive" positions, that an employee have no history of drug use. If it were, the Executive Order would not allow drug users to remain on the job and undisciplined under any circumstances, nor would it make provisions for employee rehabilitation (*see e.g.,* ¶ 10 and §§ (2)(b)(2), (4) of the Order). The INS has made no showing that Nisperos' employment would "pose a danger to public health or safety or the national security."

Defendant also relies on the Department of Justice's "Drug–Free Workplace Plan" (Def. Rebuttal Ex. C) which was issued pursuant to the Executive Order and declares that

the use of illegal drugs by all Department of Justice (DOJ) employees, on or off duty, will not be tolerated.... The DOJ, as a result of its law enforcement responsibilities, as well as the sensitive nature of its work, has an especially compelling obligation to eliminate illegal drug use from its workplace. Employees who work for an agency whose mission is to uphold and enforce the law should not themselves violate the law.

D.O.J. Plan at 1–2. Like the Executive Order, however, the absolute tone of these

---

8. The position of INS general attorney is a "sensitive" position. Le Fevre Jan. dec. ¶ 8; Momboisse dec. ¶ 4; Odenkrantz dec. ¶ 4; Department of Justice Order 2610.2, § 7(b)(1) (Def.'s Jan. 26 Brief for Summ. Judg. Ex. D at 3) (all attorneys within the Department are "sensitive" positions).

9. Hence the apparent dispute over what transpired at the meetings between Nisperos and Le Fevre is not material.

**1430**

pronouncements is softened by provisions that in certain circumstances, discipline is not required for a drug using employee who seeks rehabilitation.[10] This permission for DOJ agencies to retain without discipline even those former drug-using employees in "sensitive positions" (*see* ch. 4 § K(2) of the Plan at 21) undercuts defendant's contention that freedom from past drug use is an essential qualification of the general attorney position.

The INS Drug–Free Workplace Plan (Pltf.'s Rep. Ex. C) incorporates the DOJ plan (ch. II at 2) and thus, despite strong language about the importance of a drug-free work-place[11], also provides for exceptions to disciplining INS employees found to have used drugs. In fact, the plan provides that "[t]he Federal government ... has a compelling interest in establishing ... a plan designed to offer drug users a helping hand and, at the same time, demonstrating to drug users that illegal drug use will not be tolerated." (INS Plan ch. 1 at 1.)

Defendant points to Appendix A to the INS Plan (Def.'s Rebuttal Ex. B at 14) which includes attorneys within the listing of INS positions subject to random drug testing.[12] The inclusion of attorneys is justified by reference to the "sharp contradiction to their responsibilities as 'officers of the court' and their unique role in the United State's [sic] judicial-legal system" which would be created by illegal drug use. "Such behavior would fundamentally damage the public's need for placing unquestioned trust and confidence in these individuals." (*Id.*) Defendant, however, does not reconcile this strict language with the policy which permits the agency to allow drug users to remain on the job and undisciplined in certain circumstances and leads to

the conclusion that the drug-free requirement is not essential. The plan further attempts to justify the inclusion of attorneys by reference to the possibility that drug usage could result in inadequate job performance which might result in the loss of important cases and/or the setting of precedent adverse to the interests of the INS. (*Id.*) These latter justifications are too remote and generally applicable to serve as evidence that freedom from drug use is an essential requirement of the general attorney position. Further, there has been no showing that Nisperos' job performance was inadequate.

Defendant also cites the California Business and Professions Code sections 6007(b)(3) and 6190 for the proposition that "[t]he California legislature recognizes the incompatibility of drug use and the practice of law." (Def.'s Jan. 26 Brief for Summ. Judg. at 7 n. 6.) However, the cited sections, like the Rehabilitation Act, focus on job *performance*, and provide for restrictions on law practice when drug or alcohol dependency interferes with competent performance as an attorney. Nisperos' competent performance as an attorney is not in issue here.

Defendant relies heavily on *Copeland v. Philadelphia Police Department*, 840 F.2d 1139, 1148–49 (3rd Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989), for the proposition that "moral" qualifications may be considered in determining whether an individual is "qualified" under the act. In *Copeland*, the court held that accommodating within the ranks of the police department an officer who used illegal drugs would constitute a substantial modification of the essential functions of the department and cast doubt upon the integrity of the police force. 840 F.2d at 1140. However defendant here has not

**10.** "If an employee (1) voluntarily admits his or her drug use; (2) completes counseling or an E[mployee] A[ssistance] P[rogram]; and (3) and [sic] thereafter refrains from drug use, ... discipline 'is not required.'" DOJ Drug–Free Workplace Plan ch. 4 § K(5)(a) at 22.

**11.** The use of illegal drugs by Federal employees, on or off duty, cannot be tolerated.... The INS, as a result of its law enforcement and drug interdiction responsibilities, as well as the sensitive nature of its work in the

implementation of the Immigration and Nationality Act, and all other laws relating to immigration, naturalization, and nationality, has an especially compelling obligation to eliminate any illegal drug use from its workplace.
INS Plan ch. 1 at 1.

**12.** The INS plan, however, was not adopted until after Nisperos was terminated. (Def.'s Rebuttal at 5.)

demonstrated that the position of an INS general attorney is analogous to a police officer.[13] A police officer is on the front line of law enforcement, whereas Nisperos had no responsibilities for the investigation, apprehension, or detention of individuals suspected of criminal offenses. (Nisperos July dec. ¶ 5.) Defendants contend that Nisperos' responsibilities included giving legal advice to INS personnel who were engaged in law enforcement. The link between the former drug use of a rehabilitated addict and the impact of the legal opinions he might render to INS personnel is too tenuous to support the contention that a drug-free history is an essential requirement of Nisperos' position.[14]

In *Harmon v. Thornburgh*, 878 F.2d 484 (D.C.Cir.1989) the D.C. Circuit upheld an injunction against the Department of Justice which barred it from conducting random drug tests on certain classes of its employees. The court, relying on the Supreme Court drug-testing decisions in *National Treasury Employees Union v. Von Raab*, — U.S. ——, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) and *Skinner v. Railway Labor Executives' Association*, — U.S. ——, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), concluded that concerns for government integrity and public safety did not justify random testing of all federal prosecutors and all employees having access to grand jury proceedings. The court found "the particular dangers inherent in drug use by employees directly engaged in drug interdiction" (a reference to *Von Raab*

which upheld random drug tests on Customs officials directly involved in drug interdiction) not analogous to the department's general interest in prosecutorial integrity which underlay testing of all federal prosecutors and all employees with access to grand jury proceedings. *Harmon*, 878 F.2d at 490–91. It further found that the risk to public safety posed by a drug-using federal prosecutor was too indirect to require testing, and that concern with protecting "sensitive" information was too broad to require random testing for those without "top secret" clearance. *Id.* at 491–92. Here, similarly, the reasons the INS supplies for requiring its General Attorneys to have a drug-free history are too speculative, generalized and indirect to show that the requirement is a legitimate essential function of the job.

While it may be unusual for an employee involved with drugs to be able to demonstrate that he satisfactorily performed all the functions of his job, that is the case before the Court. The Rehabilitation Act expresses Congress' intent that "handicapped individuals are not denied jobs ... because of the prejudiced attitudes ... of others.... The Act is carefully structured to replace such reflexive reactions to actual or perceived handicaps with actions based on reasoned and medically sound judgments.... [and to prevent] discrimination on the basis of mythology...." *School Board of Nassau County v. Arline*, 480 U.S. 273, 284–85, 107 S.Ct. 1123, 1129–30, 94 L.Ed.2d 307 (1987).[15] The record demon-

---

**13.** Further, the officer in *Copeland* had committed other infractions (for example, on three occasions he had been off his beat while reporting otherwise, on another occasion he was off his beat in the presence of a drug-using officer suspected to be selling drugs), his drug use was revealed by a urine test administered after an accusation of drug use, and he denied his use of illegal drugs even after he tested positive. 840 F.2d at 1142.

**14.** Defendant also relies on *Swann v. Walters*, 620 F.Supp. 741, 747 (D.D.C.1984). The plaintiff in *Swann*, however, was demoted because his criminal conviction for sexual child abuse resulted in the revocation of his security clearance, which the court held to be a fundamental requirement of the job. Further, plaintiff's own psychiatric witnesses reported that he was a "definite threat" to others. 620 F.Supp. at 747.

*See also Hougens v. U.S. Postal Service*, 38 M.S. P.R. 135, 1988 Fed. Merit Systems Rep. ¶ 5345 (Demotion of armed law enforcement official who pointed his automatic pistol at strangers in a bar and fired at a fleeing person not barred by Rehabilitation Act where such activity struck at the core responsibility of his position and where there was medical evidence that plaintiff should not carry a loaded firearm.)

**15.** As an example of Congress' intent to prevent "discrimination on the basis of mythology," *Arline* cites Congress' inclusion within the Rehabilitation Act of drug addicts who are capable of performing their jobs and are not a direct threat to the property or the safety of others. Congress "understood the danger of improper discrimination against [drug addicts] if they were categorically excluded from coverage under the

strates that the INS based its decision on a "reflexive reaction" and not on the individualized case-by-case analysis required by the Act. *Mantolete v. Bolger,* 767 F.2d 1416, 1423 (9th Cir.1985); *see also Chalk v. U.S. Dist. Court Cent. Dist. of California,* 840 F.2d 701, 705 (9th Cir.1988). Had it done so, it could not reasonably have concluded that Nisperos was not qualified to perform the essential requirements of his job, even with reasonable accommodation if necessary.

### 3. Accommodation

Although defendant has argued across-the-board lack of qualification,[16] he appears also to contend, as a hypothetical fallback, that Nisperos is unqualified in particular to perform any duties which involve prosecution of aliens for deportation based on criminal drug involvement, or advising other INS personnel about drug laws.[17]

■ It is not necessary to decide whether freedom from past illegal drug use was an essential qualification for these duties because § 791 requires the INS to make reasonable accommodation of Nisperos' handicap. Only if Nisperos could not perform the essential requirements of his job, even despite reasonable accommodation, was his termination lawful. *Mantolete,* 767 F.2d at 1423. On the issue of accommodation, the burden is on defendant to demonstrate "that reasonable accommodation is not possible." *Prewitt v. United States Postal Service,* 662 F.2d 292, 310 (5th Cir.1981); *Mantolete,* 767 F.2d at 1423.

■ The standards for "reasonable accommodation" are set out at 29 C.F.R. § 1613.704. "Reasonable accommodation may include ... job restructuring, part-time or modified work schedules ... and other similar actions." 29 C.F.R.

§ 1613.704(b). Reasonable accommodation is not required if it would impose an "undue hardship" on the employer. In determining whether there is an "undue hardship," considerations include "[t]he overall size of the agency's program, with respect to the number of employees, number and type of facilities and size of budget...." 29 C.F.R. § 1613.704(c).

Nisperos states that "no more than 10% of the cases assigned to the five general attorneys had any tangential connection to the commission of drug offenses," (Nisperos July dec. ¶ 7) that job assignments were received on a daily basis and that his assignments "were essentially interchangeable with those of the [five] other general attorneys" in the San Francisco office. (*Id.* ¶ 6.) Thus, he suggests, his duties could be restructured so that he would not be assigned cases involving violations of the drug laws.

Defendant does not dispute the accuracy of these statements but merely asserts that "the *number* of cases assigned to [an attorney] in a given area is no indication of the *extent* of his efforts in that area," (Def.'s Rebuttal at 9.) (emphasis in original) While the question whether reasonable accommodation is necessary or feasible is often one of fact, for defendant, who has the burden, to raise a triable issue, he must come forward with facts. Defendant has not done so.

### 4. Termination Because of Handicap

Finally, defendant contends that Nisperos was not terminated because of his handicapping condition of drug addiction, but rather because he was arrested on drug charges.[18] By this logic, INS would retain only those drug-using employees who succeed in avoiding arrest, while ter-

---

Act." *Arline* 480 U.S. at 285 n. 14, 107 S.Ct. at 1130 n. 14.

16. At oral argument, counsel for defendant reiterated INS' reliance on this position

17. Defendant contends that "the only [possible] accommodation ... is the restructuring of [the] position to eliminate all drug-related duties." (Def.'s Rebuttal at 8–9.)

18. Contrary to counsel's position at oral argument, neither § 791 nor its implementing regulations require plaintiff to establish that his

handicapping condition was the "sole" reason for his termination. *See Mantolete* 767 F.2d at 1423 (if plaintiff is qualified, "employment cannot be denied *based upon* the handicap.") (emphasis added). Even if that standard was the proper one, however, defendant's attempt to distinguish Nisperos' *arrest* for being under the influence of cocaine and possession of a cocaine pipe, from Nisperos' *use* of cocaine, as the cause of his termination, would not create a material issue of fact.

minating those who are arrested. No legitimate purpose would be served by such a distinction, and there is no genuine factual dispute that plaintiff was terminated because of his handicap of drug addiction.

### III. *Conclusion*

For the foregoing reasons plaintiff is granted summary judgment on the issue of liability.

Defendant's motion to strike plaintiff's jury demand is granted.

There remain to be decided the issues concerning relief: reinstatement, back pay and attorneys' fees. It would be a waste of time and resources to litigate these issues until the question of liability has been finally determined.

The Court is therefore of the opinion that the instant order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Judgment shall therefore be entered forthwith pursuant to 28 U.S.C. § 1292(b).

IT IS SO ORDERED.